**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

In re:                                                                                    Chapter 11

Skyline Manor, Inc.,                                                          Case No. 14-80934

    Debtor.

_____/

**EMERGENCY MOTION FOR AN ORDER**
**PROHIBITING DEBTOR'S USE OF CASH COLLATERAL**

Oxford Finance LLC ("Oxford"), the prepetition senior, secured lender to the above-captioned debtor and debtor-in-possession, Skyline Manor, Inc. ("Skyline"), respectfully submits this emergency motion (this "Motion") for an order prohibiting Skyline's use of cash collateral. In support of this Motion, Oxford respectfully states as follows:

**PRELIMINARY STATEMENT**

1.    Skyline is a healthcare facility. It needs to use cash collateral to continue to operate and protect the well-being of the residents. Over a week has passed since the filing of the case and Skyline has failed to file a motion for authority to use cash collateral, despite its knowledge that it needs to obtain authority for the use of Oxford's cash collateral from Oxford or this Court. In addition, Skyline has a property insurance payment due today and yet has failed to request to use cash collateral to pay the insurance.

2.    Oxford is prepared to negotiate an interim cash collateral order for the use of its cash collateral with a reasonable budget that coincides with the timing of Oxford's recently filed Motion to Appoint a Chapter 11 Trustee [Docket No. 10]. However, Skyline has delayed all conversations related to this proposal and, in essence, has been non-responsive. As a result, Oxford files this emergency motion to bring the matter before the Court.

In re Skyline Manor, Inc.
Case No. 14-80934
Motion to Prohibit Use of Cash Collateral

**JURISDICTION**

3.    This Court has jurisdiction pursuant to 28 U.S.C. § 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**BACKGROUND**

4.    On May 8, 2014 (the "Petition Date"), Skyline filed its petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5.    Skyline continues to operate its business and manage the healthcare facility as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    No trustee, examiner, or creditors' committee has been appointed to date in the Debtors' cases. However, on May 13, 2014, Oxford filed its Motion to Appoint a Chapter 11 Trustee [Docket No. 10] (the "Trustee Motion"). Skyline's deadline to file resistance to the Trustee Motion is June 4, 2014.

7.    As of the Petition Date, Skyline was indebted to Oxford in the principal amount of approximately $11,474,364.99, plus accrued interest, fees, and costs (including professional fees and costs), charges, and obligations (collectively, the "Obligations"), all pursuant to that certain Credit and Security Agreement dated October 28, 2011 (as amended, restated, supplemented, or otherwise modified from time to time, the "Revolving Credit Agreement"); that certain Term Loan and Security Agreement dated October 28, 2011 (as amended, restated, supplemented, or otherwise modified from time to time, the "Term Loan Agreement"); that certain Amendment and Forbearance Agreement dated November 20, 2013 (as amended, restated, supplemented, or otherwise modified from time to time, the "Forbearance Agreement" and together with the Revolving Credit Agreement and the Term Loan Agreement, the "Pre-

2

In re Skyline Manor, Inc.
Case No. 14-80934
Motion to Prohibit Use of Cash Collateral

Petition Credit Agreements"); and the other loan documents related thereto (the "Pre-Petition Loan Documents").

8. The loans provided under the Pre-Petition Credit Agreements are secured by first priority liens on and security interests in all of the Skyline's property and assets as more fully described in the Pre-Petition Loan Documents (all such property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as, the "Pre-Petition Collateral"). The Pre-Petition Collateral includes all of Skyline's cash, accounts receivable, and other rights to payment as of the Petition Date, all cash collections of the Pre-Petition Collateral, and all proceeds thereof (all such cash, accounts receivable, rights to payment, cash collections, cash proceeds of Pre-Petition Collateral, and other property are referred to herein as the "Cash Collateral").

9. Skyline has been in default under the Pre-Petition Loan Documents for over a year. Prior to the Petition Date, Oxford accelerated the loans and applied all reserves based upon the defaults.

10. Within one day of the filing of this case, Oxford notified Skyline that Oxford did not consent to the use of the Cash Collateral. Notwithstanding that almost a week has elapsed since the Petition Date, Skyline has not filed a motion for authority to use the Cash Collateral.

11. All of the cash generated by Skyline in the foreseeable future will be Oxford's Cash Collateral. 11 U.S.C. § 552(b)(1).

12. On May 9, 2014, Oxford delivered notice to Skyline that it was prohibited from using Oxford's Cash Collateral.

In re Skyline Manor, Inc.
Case No. 14-80934
Motion to Prohibit Use of Cash Collateral

      13.      On May 10, 2014, Skyline's counsel confirmed receipt of the notice. On May 12, 2014, Skyline's counsel indicated that he would be filing a motion to use the Cash Collateral that day. However, the motion was not filed.

      14.      On May 13, 2014, Skyline's counsel sent Oxford's counsel a draft motion to use Cash Collateral and a budget in connection therewith. The proposed motion did not include the provision of adequate protection to Oxford or reporting requirements for Skyline. The budget provided was for the entire month of May and did not detail payments made before the Petition Date or the payments that will need to be made after the Petition Date. Indeed, the budget was exactly the same as a budget submitted to Oxford several months ago for the entire month of January. The budget also included the payment of management fees, which are prohibited by the Pre-Petition Loan Documents and payment of legal fees even though Skyline's counsel has not yet filed an application for employment with this Court. Contrary to the proposed motion, the budget contained a proposed adequate protection payment to Oxford, although Oxford was unable to determine how the payment was surmised.

      15.      Within three hours of receiving the proposal, Oxford's counsel provided its comments to Skyline's counsel regarding the proposal. Oxford indicated that in order for it to agree to an interim order, Skyline needed to: provide Oxford with adequate protection for the use of the Cash Collateral and explain the proposed adequate protection payment haphazardly plugged into the budget, prepare a budget broken down by weeks to show the necessary detail following the Petition Date, provide immediate access to books and records, and remove the payment of management fees and legal fees from the proposed budget.

      16.      Skyline's counsel told Oxford that he immediately relayed Oxford's comments to Skyline and he would report back to Oxford once he heard from his client.

4

...

In re Skyline Manor, Inc.
Case No. 14-80934
Motion to Prohibit Use of Cash Collateral

17. By mid-day on May 14, 2014, Oxford still had not heard back from Skyline regarding the Cash Collateral and Oxford reached out to Skyline once again. Oxford conveyed its desire to address Cash Collateral immediately so that Skyline's operations were not disrupted.

18. Three hours later Skyline's counsel responded by sending a slightly revised budget for the use of Cash Collateral. A copy of this budget is attached hereto as Exhibit A. However, aside from removing the proposed payments for management and legal fees, the budget was again illogical. It was for the entire month of May, not from the Petition Date through the end of the month. It was an accrual, not cash budget. There is no opening balance. And Skyline has provided no explanation for the proposed adequate protection payment to Oxford in the budget.

19. Oxford immediately responded to Skyline with these issues. Oxford also attached a proposed interim cash collateral order (a copy of which is attached hereto as Exhibit B), told Skyline it was open to negotiate the order and requested Skyline's comments thereon.

20. Skyline's counsel responded that he sent the proposed order to his client for comment and didn't expect to have comments until today, May 15, 2014, by 10 a.m. Counsel also indicated that the budget was only for post-petition periods.

21. Oxford agreed to wait until 10 a.m. on May 15, 2014 for comments to the order, but advised Skyline's counsel that it was highly unlikely that the budget was for the last two weeks of May because the budget was exactly the same as Skyline's budget previously (pre-petition) submitted to Oxford for the entire month of January.

22. Skyline never responded with comments to the order or with a revised budget.

23. In addition, Skyline has a property insurance installment payment due on May 15, 2014. A copy of the invoice is attached hereto as Exhibit C. Skyline has failed to request to use

5

In re Skyline Manor, Inc.
Case No. 14-80934
Motion to Prohibit Use of Cash Collateral

Cash Collateral to pay the insurance and, due to the pre-petition loan acceleration and application of reserves, there are no reserves from which Oxford can pay this bill. Oxford alerted Skyline to this issue and requested immediate confirmation of payment.

24. As of the filing of this Motion, Oxford has not received an update from Skyline on any of these critical issues.

**ARGUMENT**

25. In light of Oxford's perfected security interests in and liens on all of Skyline's assets, any cash generated by Skyline is Oxford's Cash Collateral. Under section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral if the entity having an interest in such cash collateral consents or the court authorizes such use following a finding that such secured creditors' property interest in the cash collateral is "adequately protected."

26. Oxford has not consented Skyline's use of the Cash Collateral. Skyline has failed to ask this Court to authorize its use of the Cash Collateral and, as a result, there is no order from this Court allowing such use or finding that Oxford's property interest in the Cash Collateral is adequately protected.

27. An entire week has passed since the Petition Date. Skyline clearly needs to use Oxford's Cash Collateral to operate the healthcare facility. However, to do so, Skyline must engage and address this matter immediately.

**WHEREFORE,** Oxford respectfully requests that the Court enter an order prohibiting Skyline's use of the Cash Collateral until it properly obtains Oxford's consent or an order from this Court and grant such other and further relief as the Court deems just proper and equitable.

[Signatures on Following Page]

In re Skyline Manor, Inc.
Case No. 14-80934
Motion to Prohibit Use of Cash Collateral

Dated: May 15, 2014

Respectfully submitted;

By: ___/s/ Paige E. Barr___
Kenneth J. Ottaviano, (Admitted Pro Hac)
Paige E. Barr (Admitted Pro Hac)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: 312-902-5200
Facsimile: 312-902-1061
Kenneth.Ottaviano@kattenlaw.com
Paige.Barr@kattenlaw.com

-and-

Jeffrey J. Blumel, #19011
Robert M. Schartz, #20155
Ryan M. Kunhart, #24692
ABRAHAMS KASLOW & CASSMAN LLP
8712 West Dodge Road, Suite 300
Omaha, NE 68114
Telephone: 402-392-1250
Facsimile: 402-392-0816
jblumel@akclaw.com
rschartz@akclaw.com
rkunhart@akclaw.com

US_100564401_1