**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| SKYLINE MANOR, INC. ) | Case No. BK 14-80934 |
| ) | Chapter 11 |
| Debtor. ) | |

**DEBTOR'S EMERGENCY MOTION PURSUANT TO
11 U.S.C. §§ 105, 361, 362, AND 363 FOR THE ENTRY OF AN ORDER
APPROVING THE USE OF CASH COLLATERAL ON AN INTERIM BASIS,
AUTHORIZING THE USE OF CASH COLLATERAL ON A FINAL BASIS, AND
SCHEDULING A FINAL HEARING**

COMES NOW Skyline Manor, Inc., debtor and debtor-in-possession in the above captioned bankruptcy case ("Debtor"), pursuant to 11 U.S.C. §§ 105, 361, 362, and 363, and Fed. R Bank. P. 4001, and in support of its Emergency Motion for Entry of an Order Approving the Use of Cash Collateral on an Interim Basis, Authorizing the Use of Cash Collateral on a Final Basis, and Scheduling a Final Hearing (the "Motion"), states and alleges as follows:

**PRELIMINARY STATEMENT**

1. On May 9, 2014 ("the Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code").

2. Debtor stands in the shoes of a trustee in bankruptcy and continues to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1101, 1107 and 1108.

3. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5. Venue of this case and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Case 14-80934-TLS    Doc 64    Filed 05/16/14    Entered 05/16/14 12:06:09    Desc Main
Document    Page 2 of 7

IN THE MATTER OF
SKYLINE MANOR, INC.
Case No. BK 14-80934
Motion to Use Cash Collateral

6. Debtor seeks the use of Cash Collateral (as that term is defined in the Bankruptcy Code) during the pendency of this Chapter 11 Case on a non-consensual basis pursuant to 11 U.S.C. §363(c)(2)(B).

## DEBTOR'S BACKGROUND

7. For more than 40 years, Debtor has offered Omaha's senior citizens a comfortable lifestyle with exceptional peace of mind. Debtor was founded when a group of 11 individuals representing various local churches, met to share their Christian concern for the elderly. With that vision, Debtor became Omaha's first continuing care community offering independent living, assisted living and skilled care on one campus. Debtor remains a non-profit organization with an advisory board which is affiliated with the founding community churches. Debtor's primary business focuses on providing continuing care graduating to levels of care if the need arises, including: Independent Living, Assisted Living, Short Term Rehabilitation, and Long Term Care. Debtor provides this care to more than 230 residents.

## RELIEF REQUESTED

8. Debtor seeks entry of order authorizing the use of Cash Collateral on an interim and final basis.

9. Debtor needs to pay its payroll, trade vendors, and other monthly expenses as they become due as set forth in the budget attached as Exhibit A (the "Budget"). This use of Cash Collateral would ensure the continued care of Debtor's residents and allow Debtor to operate its retirement community.

DB04/1004530.0002/10834743.1

IN THE MATTER OF
SKYLINE MANOR, INC.
Case No. BK 14-80934
Motion to Use Cash Collateral

10. The failure of Debtor to have access to Cash Collateral during the pendency of this Case will have dire consequences on the ability of the Debtor to fulfill its obligations of providing care to its elderly residents, which is Debtor's primary concern.

11. More specifically, Debtor has at least 142 residents that depend on medications, nutrition, therapy and other medical treatments to sustain life, in accordance with physician orders.  In addition, Debtor is required to have sufficient resources, in accordance with Nebraska and Federal Laws, for participation in the Medicare and Medicaid programs.  Interference with Debtor's access to its resources to meet the need of the residents will cause the Debtor irreparable harm.

12. As of this date, the only funds available to the Debtor are its cash reserves and future income derived from Debtor's operations, which generate, among other things, contract receivables and commercial account receivables as shown in the Budget.

13. However, these assets may[1] constitute the cash collateral of Oxford Finance, LLC ("Oxford").

14. Pursuant to 11 U.S.C. § 363(c)(2), a debtor in possession must obtain either the consent of the lien holder or court permission to use Cash Collateral.

15. Despite having traveled to Omaha for an anticipated UCC Article 9 equipment sale, Oxford's representatives declined to meet with Debtor and its counsel in person.  It was not until after business hours on Friday, May 9, 2014, that Oxford's counsel in Chicago sent the

---

[1] Nothing herein shall be or should be deemed: (i) a waiver of any claims or defense Debtor has against Oxford, including any claim or right to challenge Oxford's claimed interest in cash collateral; (ii) an acknowledgment that Oxford possesses an interest in or lien on Debtor's cash, cash equivalents, or cash collateral.

DB04/1004530.0002/10834743.1

IN THE MATTER OF
SKYLINE MANOR, INC.
Case No. BK 14-80934
Motion to Use Cash Collateral

undersigned correspondence in which Oxford indicated that it claimed an interest in the cash, cash equivalents and accounts receivable (or in other words, the Cash Collateral) of Debtor. Oxford also stated that Debtor does not have Oxford's consent to use Cash Collateral under any circumstances, which, presumably, includes using Debtor's resources to care for the elderly and infirmed under Debtor's responsibility.

16. Since that time, Debtor and its counsel have been in contact with Oxford's counsel and Debtor believed it was working towards a good faith resolution. In fact, it is Debtor's belief that it had reached an agreement in principal on a consensual cash collateral motion and order for an interim period. Debtor even provided Oxford with a budget for that purpose. It appears as though the only remaining issue to resolve is the details of the budget. It now appears that Oxford has decided to take a different tack.

17. On May 15, 2104, despite ongoing conversations (and Oxford's demands that certain critical bills – including payroll – be paid), Oxford filed an emergency motion to prohibit the use of cash collateral. *See* Filing No. 53. In that motion, Oxford's three biggest issues appear to be as follows:

    a.    First, Oxford did not like the form in which the proposed budget appeared;

    b.    Second, Oxford complains that Debtor has not "provided any explanation for the proposed adequate protection payment to Oxford in the budget." *See* Filing No, 54, ¶18. This is a somewhat incredulous issue given that: (1) Debtor is actually proposing to pay Oxford cash; and (2) as will be explained below, Oxford sits on an equity cushion of somewhere between $6.5 and $14 million dollars;

Case 14-80934-TLS    Doc 64    Filed 05/16/14    Entered 05/16/14 12:06:09    Desc Main
Document    Page 5 of 7

IN THE MATTER OF
SKYLINE MANOR, INC.
Case No. BK 14-80934
Motion to Use Cash Collateral

      c.      Third, Oxford demands access to Debtor's books and records. As the Court will note, Debtor and Oxford have already agreed to a stipulation regarding access to Debtor's books and records. *See* Filing No. 51.

18. In order to continue operations and care for its residents, Debtor requests that this Court immediately grant the interim use of Cash Collateral pursuant to the Budget until a hearing is conducted on a final Cash Collateral order.

19. However, in considering whether to authorize the use of Cash Collateral, a court must find that the interests of the holder of the secured claim are adequately protected if they do not consent to such use. See 11 U.S.C. § 363(e). The principal purpose of adequate protection is to safeguard the interests of the secured creditor in the collateral against diminution in the value of that interest postpetition. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (stating that the goal of adequate protection is to safeguard the secured creditor from diminution in value of its interest during Chapter 11).

20. There is a great deal of flexibility in terms of what may constitute adequate protection. *MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Ultimately, adequate protection is determined on a case-by-case basis in light of the particular facts and circumstances presented. Id.

21. A list of commonly influential factors in deciding what constitutes adequate protection "is easily derived from prior court decisions on this topic. Of these factors, the most prevalent include the sufficiency of the equity cushion, periodic payments, additional liens, or a good prospect of a successful reorganization. <u>By far the most determinative of these factors, however, is the existence of an equity cushion</u>." *In re Panther Mountain Land Dev., LLC*, 438

DB04/1004530.0002/10834743.1

IN THE MATTER OF
SKYLINE MANOR, INC.
Case No. BK 14-80934
Motion to Use Cash Collateral

B.R. 169, 190 (Bankr. E.D. Ark. 2010) *emphasis added.  See also In re Belton Inns, Inc.*, 71 B.R. 811, 816 (Bankr. S.D. Iowa 1987) (The classic protection for a secured debt is the existence of an 'equity cushion').

22. As noted by the Arkansas Bankruptcy Court, "'equity cushion' is a term of art defined as the amount by which the value of the collateral exceeds the liens—equity—which will operate as a shield to protect the creditor's interest—cushion—if the property value declines during the bankruptcy case.  Whether the measure of the equity cushion is sufficient to provide adequate protection is ultimately decided on a case-by-case basis." *In re Panther Mountain Land Dev., LLC*, 438 B.R. 169, 190 (Bankr. E.D. Ark. 2010).

23. Oxford claims to be owed between $11 and $12 million dollars.  A professional appraisal conducted less than a year ago indicates that Debtor's property is worth between $18.5 and $26 million dollars.[2]  Presuming, for exemplary purposes only, that Oxford is owed $12 million dollars, there exists an equity cushion vis-à-vis Oxford's debt of somewhere between $6.5 and $14 million dollars.

24. Against this backdrop, the amount of cash and/or Cash Collateral Debtor seeks to use during the interim period is relatively small.  Moreover, and despite Oxford's current position, the use of Cash Collateral will also directly benefit Oxford by preserving Debtor's operations and the value of Debtor's assets.  Finally, Debtor's operations generate sufficient income on a monthly basis to cover its non-debt service related operating expenses.  As a result, the cash or Cash Collateral to be spent on a monthly basis will be replenished on a monthly basis.  From that

---

[2] A copy of this appraisal is attached to the Declaration of John Bartle in support of this Motion and filed contemporaneously herewith.

Case 14-80934-TLS    Doc 64    Filed 05/16/14    Entered 05/16/14 12:06:09    Desc Main
Document    Page 7 of 7

IN THE MATTER OF
SKYLINE MANOR, INC.
Case No. BK 14-80934
Motion to Use Cash Collateral

perspective, Debtor does not propose to use a finite or wasting asset, but rather proposes to use its monthly cash flow to fund it operations during the pendency of this case.

25. Therefore, Debtor submits that Oxford's potential interest in Debtor's Cash Collateral (or really its interest in all Debtor's assets) to be used pursuant to the Budget is adequately protected.

26. Based on the above, Debtor requests that this Court immediately grant this motion on an interim basis and schedule a final hearing on the matter in 30 days.

27. Debtor will immediately give all parties in interest notice as required by Bankruptcy Rule 4001(b)(1)(C).

## **CONCLUSION**

WHEREFORE, Debtor respectfully requests the Court immediately enter an Order in substantially the same form as is attached hereto as Exhibit "B" granting this Motion authorizing the use of Cash Collateral on an interim basis pursuant to the Budget, scheduling a final hearing, and granting any other relief at equity or law this court deems necessary.

Respectfully submitted this ___ day of May, 2014.

**SKYLINE MANOR, INC., Debtor**

By:   /s/ Patrick R. Turner
    Robert V. Ginn # 15061
    Patrick R. Turner #23461
    Stinson Leonard Street LLP
    1299 Farnam Street, Suite 1500
    Omaha, NE 68102
    Tel. No. (402) 342-1700
    Fax No. (402) 342-1701
    robert.ginn@stinsonleonard.com
    patrick.turner@stinsonleonard.com
    Counsel for Debtor