**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In re: | Chapter 11 |
| Skyline Manor, Inc., | Case No. 14-80934 |
| Debtor. | |

_____/

**OXFORD FINANCE LLC'S OBJECTION TO DEBTOR'S
EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 363 FOR THE
ENTRY OF AN ORDER APPROVING THE USE OF CASH COLLATERAL ON AN
INTERIM BASIS, AUTHORIZING THE USE OF CASH COLLATERAL ON A FINAL
BASIS AND SCHEDULING A FINAL HEARING**

Oxford Finance LLC ("Oxford"), as senior secured lender, respectfully submits this objection (this "Objection") to the Emergency Motion Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363 for the Entry of an Order Approving the Use of Cash Collateral on an Interim Basis, Authorizing the Use of Cash Collateral on a Final Basis and Scheduling a Final Hearing [Docket No. 64] (the "Skyline Motion") filed by above referenced debtor, Skyline Manor, Inc. ("Skyline"). In support of this Objection, Oxford states as follows:

**PRELIMINARY STATEMENT**

1. Skyline needs to ensure the well-being of its patients. Oxford understands this. And even though Oxford seeks to have an independent third party put in place to manage Skyline, Oxford has made every effort possible to find common ground on a cash collateral proposal in the interim. However, Skyline has refused to engage.

2. Skyline waited over a week from the filing of this case to file the Skyline Motion and even then it was only filed on the heels of Oxford filing its Motion to Prohibit Skyline's Use of Cash Collateral [Docket No. 53] ("Motion to Prohibit").

In re Skyline Manor, Inc.
Case No. 14-80934
Oxford's Objection to Cash Collateral Motion

3.  Unfortunately, the Skyline Motion does not change Oxford's position in its Motion to Prohibit and Oxford relies on its arguments set forth in the Motion to Prohibit in objecting to the Skyline Motion. The budget attached to the Skyline Motion still has issues. Even Skyline's food vendor takes issue with Skyline's budget. (*See* Email from J. Titus attached hereto as Exhibit A.) And, contrary to Skyline's assertion, no stipulation regarding access to Skyline's books and records was provided by Skyline. (Docket No. 51 is a stipulation for a discovery timeline with respect to Oxford's motion to appoint a trustee – there are no provisions in the stipulation providing Oxford access to Skyline's books and records).

4.  While Oxford is amenable to a short term interim cash collateral order, Skyline needs to provide Oxford with at least the basic adequate protection. Skyline asserts that Oxford is not entitled to adequate protection because it is over-secured by between $6.5 million and $14 million based upon an appraisal conducted in July 2013. However, Oxford was provided an appraisal in January 2014 that, based upon the information provided by Skyline, valued Skyline's assets at $11.6 million. (*See* Exhibit B attached hereto).

5.  As a result, Oxford respectfully requests that this Court provide a procedure for expedited discovery in any interim cash collateral order.

**ARGUMENT**

**I.    Under Section 363 of the Bankruptcy Code, Skyline May Not Use Oxford's Cash Collateral Without Oxford's Consent Unless Skyline Meets Its Burden of Showing that Oxford is Adequately Protected.**

6.  Skyline must prove that Oxford is adequately protected before this Court can allow Skyline to use Oxford's cash collateral.

7.  In light of Oxford's perfected security interests in and liens on substantially all of Skyline's assets and all proceeds thereof, any cash generated by Skyline is Oxford's cash collateral.

8.  Skyline is prohibited from using the cash collateral unless Oxford consents, or this Court, after notice and a hearing, authorizes such use. 11 U.S.C. § 362(c)(2); *Fed. Nat'l Mortg. Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 210 (N.D. Ill. 1993). If Skyline cannot offer adequate protection, this Court must prohibit its use of the Cash Collateral absent Oxford's consent because adequate protection of a secured lender's interest in cash collateral is *mandatory*. 11 U.S.C. § 363(e) ("at any time … the court, with or without a hearing, shall prohibit or condition such use … as is necessary to provide adequate protection of such interest."); *Dacon Bolingbrook*, 153 B.R. at 210; *In re Heatron*, 6 B.R. 493, 495 (Bankr. W.D. Mo. 1980); 3 COLLIER ON BANKRUPTCY ¶ 363.05 (3d ed. Rev. 2005) ("if a trustee seeks to use cash collateral and cannot obtain the consent of the entity with an interest in the collateral, adequate protection must be furnished before the cash collateral can be used.").

9.  This restriction is critical "for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the [Debtor]." *In re Earth-Lite, Inc.*, 9 B.R. 440, 443 (Bankr. M.D. Fla. 1981). In other words, any order authorizing a debtor's use of cash collateral absent the secured party's consent must specifically address whether the secured party is adequately protected by such use and, if not, how the cash collateral use should be conditioned so that it is. *See Chrysler Credit Corp v.*

3

*Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017 (11th Cir. 1984); *In re Dynaco Corp.*, 162 B.R. 389 (Bankr. D.N.H. 1993).

10. Adequate protection may be furnished in a variety of forms and section 361 of the Bankruptcy Code provides an illustrative guide. *See* 11 U.S.C. § 361. In short, because Oxford does not consent to Skyline's use of the cash collateral, Skyline must make compensatory payments to Oxford, provide Oxford with additional or replacement liens, and/or provide Oxford with the indubitable equivalent of its interest in the property. *See id.* Additionally, Oxford must be fully and adequately compensated for the diminution in value that will result from Skyline's use of the cash collateral.

II. **Skyline Has Not Established that Oxford's Interests in the Cash Collateral Are Adequately Protected and Skyline Should be Prohibited from Using Cash Collateral.**

11. Skyline bears the burden of proposing an adequate protection package and has failed to do so. 11 U.S.C. § 363(p)(1) ("the [debtor in possession] has the burden of proof on the issue of adequate protection"); *In re Swedeland Dev. Group*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Sterling Estates (Del.), LLC*, No. 10 B 22319, 2011 WL 350614, *5 (Bankr. N.D. Ill. Feb. 1, 2011); s*ee generally* 3 COLLIER ON BANKRUPTCY ¶ 363.06 (3d ed. rev. 2005). Indeed, "the [d]ebtors' standard in cash collateral cases is a high one." *First Bank of Miller v. Wieseler*, 45 B.R. 871, 876 (D.S.D. 1985). Skyline, and not the court, must frame the adequate protection package. *In re Blehm Land and Cattle Co.*, 859 F.2d 137 (10th Cir. 1988); *see also* H.R. REP. NO. 595, 95th Cong., 1st Sess. 339 (1977) ("the debtor in possession will provide or propose a protection method"). The standard in cash collateral cases is high because cash, once spent, is permanently removed from a secured lender's collateral base. Cash is the highest, best, and most

secure form of collateral. *See*, *e.g.*, *In re Berens*, 41 B.R. 524, 527 (Bankr. D. Minn. 1984) ("if the [d]ebtor is allowed to use the cash collateral[,] the creditors' [s]ecurity – the collateral – is gone"); 3 COLLIER ON BANKRUPTCY ¶ 363.06 (3d ed. rev. 2005).

12. Importantly, simply "needing" the use of cash collateral for continued operations is not a basis for allowing Skyline to use Oxford's cash collateral. *In re McCutchen*, 115 B.R. 126, 133 (Bankr. W.D. Tenn. 1990) (denying use of cash collateral, holding that "mere need does not satisfy the requirements of sections 361 and 363"); *see also In re Goode*, 235 B.R. 584, 590 (Bankr. E.D. Tenn. 1999) ("While the Court understands the ramifications of failing to get [cash collateral] authorization can be devastating to a debtor's case, that fact alone simply cannot suffice as the sole means by which to justify the use of a creditor's cash collateral . . ."). While the Court must be flexible in applying the adequate protection standard, "such flexibility must not operate to the detriment of the secured creditor's interest." *In re McCombs Props. VI, Ltd.*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988).

13. Skyline does not propose to provide any adequate protection to Oxford in the form of replacement liens, payments or indubitable equivalent of its interest in the pre-petition collateral. Instead, Skyline alleges that Oxford is not entitled to adequate protection because it is over-secured.

14. However, while Skyline alleges that Oxford is over-secured by a significant amount, Oxford believes any equity cushion it has is much smaller. In order to use Oxford's cash collateral, Skyline must prove the correct value of the collateral. *See*, *e.g.*, *George Ruggiere*, 727 F.2d at 1019 ("In determining whether a creditor's secured interests are []

5

protected, there must be an individual determination of the <u>value</u> of that interest and whether a proposed use of cash collateral threatens that value." (emphasis in original)).

15. In proposing an adequate protection package, Skyline must provide more than mere speculation regarding the protection being offered. *See*, *e.g.*, *In re Mosello*, 195 B.R. 277, 292 (Bankr. S.D.N.Y. 1996) (finding insufficient evidence of adequate protection based on debtor's projection of future transactions); *Wieseler*, 45 B.R. at 876 (rejecting debtors' proffer of a replacement lien in future crops, finding that the debtors "must go beyond simply estimating what they hope they can harvest and what they hope the market will bring for it"); *In re Lundell Farms*, 86 B.R. 582, 592 (Bankr. W.D. Wis. 1988).

16. As a result, discovery on the value of the pre-petition collateral and Skyline's ability to meet a budget are necessary before a final cash collateral order can be entered.

17. Skyline has not met its burden of substantiating that Oxford is adequately protected.

**III. Oxford Should be Afforded Meaningful Adequate Protection in this Case.**

18. If this Court grants Skyline the authority to use the cash collateral, it should condition such use with meaningful forms of adequate protection.

19. For example, in the *Dacon Bolingbrook* case, the court required debtor to, among other things, (a) provide detailed weekly reports of actual expenditures and income and detailed monthly budget projections, (b) provide advanced notice and obtain mandatory court authorization prior to making expenditures exceeding the budgeted amount or making off-budget expenditures, (c) create an escrow account into which to deposit rents in excess of the debtor's authorized expenditures, and (d) grant a lien to the lender on that escrow account. *Dacon*

In re Skyline Manor, Inc.
Case No. 14-80934
Oxford's Objection to Cash Collateral Motion

*Bolingbrook*, 153 B.R. at 215; *see also In re Int'l Design & Display Group, Inc.*, 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (requiring the debtor to provide weekly reports to creditor detailing use of cash, collection and generation of accounts receivable and contracts, and use and purchase of inventory); *In re Growers Props. No. 56 Ltd.*, 117 B.R. 1015, 1015 (Bankr. M.D. Fla. 1990) ("This Court has previously awarded adequate protection in the form of periodic payments, inspection rights, reporting by the Debtors, and other protection as to the use of cash collateral."); *In re Omni Contracting Co.*, 71 B.R. 107, 109-10 (Bankr. M.D. Fla. 1987) (requiring debtor to provide proper maintenance, proof of insurance on equipment and monthly inspections of equipment).

20.     The ultimate determination of adequate protection depends on the facts and circumstances of each case. *See*, *e.g.*, *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985) (providing "a debtor, in structuring a proposal of adequate protection for a secured creditor, 'should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights.'"); *In the Matter of Lafayette Dial, Inc.*, 92 B.R. 798, 799 ("Adequate protection has always been recognized as a flexible concept, which can be molded to meet the peculiar facts and circumstances of each particular case."); *Earth Lite*, 9 B.R. at 444 ("There are a variety of means by which this could be accomplished and the Court must fashion an appropriate 'adequate protection' for a secured party after consideration of all facts involved and circumstances of the case.").

21.     In this case, any order permitting Skyline to use the cash collateral should include the following provisions to ensure Oxford's adequate protection:

7

In re Skyline Manor, Inc.
Case No. 14-80934
Oxford's Objection to Cash Collateral Motion

    a. Skyline shall provide Oxford replacement liens in all post-petition assets of Skyline of the same type and to the same extent and validity as secured Skyline's indebtedness to Oxford prior to the Petition Date.

    b. Beginning on the first Monday following the entry of an order and on each Monday thereafter, Skyline shall provide Oxford a written report setting forth the following for the applicable period: (i) all cash receipts received by Skyline or its agents or representatives with respect to Skyline's business; (ii) all payments made by Skyline; (iii) copies of all invoices issued by Skyline or its agents or representatives with respect to the Skyline's business; and (iv) updated actual performance compared to the Budget on a week-by-week basis, line-item by line-item, stating all variances and providing a narrative discussion and analysis by management of Skyline with respect to any and all negative variances.

    c. Skyline shall pay its monthly real estate taxes and property insurance payments into escrow held by Oxford, consistent with the Pre-Petition Loan Documents.

    d. All cash collateral shall be deposited in Skyline's debtor-in-possession account(s) to be established in accordance with the United States Trustee guidelines.

    e. Skyline shall at all times (i) account for all cash collateral that comes into its possession, custody or control, (ii) keep records reasonably sufficient for Oxford to determine the status of cash collateral collections and expenditures and provide such records to Oxford upon its request, and (iii) shall provide to Oxford copies of the monthly operating reports filed with this Court and with the Office of the United States Trustee.

    f. Skyline shall provide Oxford and its designated representatives access to its books and records and other such information Oxford may request to monitor and evaluate the pre-petition collateral and the cash collateral. Skyline shall make available for inspection by Oxford or its designated representative(s) all of the Oxford's collateral, including, without limitation the Healthcare Facility. Skyline shall also permit Oxford and its designated representatives to observe Skyline's conduct and compliance with the terms and provisions of any cash collateral order and the pre-petition loan documents.

    g. Skyline's right to use the cash collateral should expire on the earliest to occur of: (a) May 30, 2014; (b) the entry by this Court of an order reversing, amending, supplementing, staying, vacating or otherwise modifying the terms of an interim order permitting the use of cash

    collateral; (c) the conversion of the Skyline's bankruptcy case to a case under chapter 7 of the Bankruptcy Code; (d) the appointment of a trustee or examiner or other representative with expanded powers for Skyline; and (e) the occurrence of the effective date or consummation of a plan of reorganization.

    h. The order incorporating these conditions should be binding on any subsequently appointed trustee in Skyline's case, including if Skyline's chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code.

22. Imposing these conditions on Skyline's use of cash collateral will help ensure that Oxford is adequately protected and that it will receive the value of it's bargained for rights under the pre-petition loan documents.

### REQUEST FOR EXPEDITED DISCOVERY

23. Oxford further requests the ability to conduct expedited discovery with respect to Skyline's request to use the cash collateral, including the alleged value of Skyline's assets and Skyline's financials. In that regard, Oxford respectfully requests that this Court order that requests for production of documents must be responded to within 7 business days of the service of the request, which may be done by e-mail, and depositions may be noticed with 5 or more business days' notice and such notice may also be served by e-mail.

### CONCLUSION

24. For all of the foregoing reasons, the Motion should be denied and Skyline should be permitted to use cash collateral only as set forth herein.

[Signatures on Following Page]

In re Skyline Manor, Inc.
Case No. 14-80934
Oxford's Objection to Cash Collateral Motion

Dated: May 17, 2014                                       Respectfully submitted;

                                                                         By:    /s/ Paige E. Barr
Kenneth J. Ottaviano, (Admitted Pro Hac)
Paige E. Barr (Admitted Pro Hac)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street
Chicago, Illinois 60661
Telephone: 312-902-5200
Facsimile: 312-902-1061
Kenneth.Ottaviano@kattenlaw.com
Paige.Barr@kattenlaw.com

-and-

Jeffrey J. Blumel, #19011
Robert M. Schartz, #20155
Ryan M. Kunhart, #24692
ABRAHAMS KASLOW & CASSMAN LLP
8712 West Dodge Road, Suite 300
Omaha, NE 68114
Telephone: 402-392-1250
Facsimile: 402-392-0816
jblumel@akclaw.com
rschartz@akclaw.com
rt@akclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed the above and foregoing with the Clerk of the Bankruptcy Court on May 17, 2014, using the CM/ECF system which sent notification to all CM/ECF participants.

                                                                          /s/  Paige E. Barr