## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SKYLINE MANOR, INC. | ) | Case No. 14-80934 (TLS) |
| | ) | |
| Debtor. | ) | |

### CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE ESTATE'S ASSETS, (B) APPROVING BREAK-UP FEE, (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE PROPOSED SALE, AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER APPROVING THE SALE AND GRANTING CERTAIN RELATED RELIEF

Ron Ross, in his capacity as chapter 11 trustee (the "Chapter 11 Trustee") for

Skyline Manor, Inc. (the "Debtor"), by and through his undersigned counsel, hereby files this

motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit**

**A** (the "Bidding Procedures Order"): (a) approving bidding and auction procedures (collectively,

the "Bidding Procedures"), a copy of which is attached hereto as **Exhibit B**, in connection with

the potential sale(s) of substantially all assets (the "Purchased Assets") of the Debtor's estate (the

"Estate"), free and clear of all claims and any other interests, liens, mortgages, pledges, security

interests, rights of first refusal, obligations, and encumbrances of any kind whatsoever

(collectively, the "Interests"), except to the extent identified in a Successful Bidder's (as defined

below) asset purchase agreement; (b) approving a Break-Up Fee (as defined below) to be granted

at the Chapter 11 Trustee's discretion; (c) approving the form and manner of sale notices (the

"Notice Procedures"); (d) scheduling an auction (the "Auction") if, subject to the Bidding

Procedures, the Chapter 11 Trustee receives more than one Qualified Bid (as defined below), and

setting a date and time for a sale hearing (the "Sale Hearing") for the sale (the "Sale") of the

Purchased Assets; and (e) granting certain related relief.

The Chapter 11 Trustee further requests that, subject to the results of the Auction and the Bidding Procedures, the Court enter an order, substantially in the form attached hereto as **Exhibit C** (the "Sale Order") approving and authorizing the Sale of the Purchased Assets free and clear of all Interests except to the extent set forth in a Successful Bidder's asset purchase agreement. In support hereof, the Chapter 11 Trustee respectfully states as follows:

## JURISDICTION AND VENUE

1.       This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's chapter 11 case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105, 363, and 365 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.* as amended, the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Nebraska (the "Local Rules").

## BACKGROUND

**A.       Bankruptcy Case Background**

2.       On May 8, 2014 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.       On May 15, 2014, the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code (Docket No. 52).

4.       On May 30, 2014, the U.S. Trustee filed an Application for Order Approving Appointment of Chapter 11 Trustee (the "Application") (Docket No. 181), pursuant to which the U.S. Trustee sought entry of an order approving the appointment of Ron Ross to

serve as Chapter 11 Trustee in this case.  On May 30, 2014, the Court entered the Order Granting

the Application (the "Chapter 11 Trustee Order") (Docket No. 182).

      5.      On June 2, 2014, the U.S. Trustee filed the Notice of Appointment of

Chapter 11 Trustee, pursuant to which the U.S. Trustee appointed Ron Ross to serve as Chapter

11 Trustee in accordance with the Chapter 11 Trustee Order.

**B.**      **Debtor's Business**

      6.      The Debtor is a is a tax-exempt organization described in section

501(c)(3) of the Internal Revenue Code that was formed for charitable and religious purposes

and currently owns and operates a continuing care retirement facility, a skilled nursing and

rehabilitation center and a personal care center (known as the "Skyline Retirement Community")

located at 7300 and 7350 Graceland Drive, Omaha, Nebraska 68134-4358.

      7.      The Skyline Retirement Community first opened its doors in October of

1969, providing Omaha, Nebraska its first continuing care community offering independent

living, assisted living and skilled care facility all on one campus.  The Skyline Retirement

Community's mission is to "enrich senior's lives in mind, body and spirit by providing a

progressive, affordable senior living community with a continuum of care and a legacy of

caring."

**C.**      **Capital Structure**

      **(i)**      **Secured Debt**

      8.      Oxford Finance, LLC ("Oxford") provided approximately $11.6 million in

pre-petition loans to the Debtor pursuant to: (i) that certain Credit and Security Agreement dated

as of October 28, 2011; (ii) that certain Term Loan and Security Agreement; and (iii) that certain

Amendment and Forbearance Agreement dated as of November 20, 2013 (together will all other

loan documents related thereto, the  "Secured Loan Agreements").

9.      Pursuant to the various agreements entered into by the Debtor in connection with the Secured Loan Agreements, Oxford asserts that it is secured in all, or substantially all, of the Debtor's real and personal property.

### (ii)      Administrative Claims

10.      There are approximately $2,000,000 in accrued and unpaid administrative claims as of the date of this Motion.[1]

### (iii)      Trade Debt

11.      In addition to Oxford and administrative claimants, the other primary creditor constituency in this case consists of general unsecured creditors (*i.e.*, trade debt) who were owed approximately $2,000,000 as of the Petition Date.

### D.      The Chapter 11 Trustee's Anticipated Sale Process

12.      The Chapter 11 Trustee, in consultation with the Committee and Oxford, intends to sell the Purchased Assets pursuant to a competitive sale process under section 363(b) of the Bankruptcy Code (the "Sale Process").  The Purchased Assets include substantially all of the Estate's assets, which include any and all of the Estate's real property, equipment, inventory, fixtures, furniture, contracts, and agreements.

13.      The Chapter 11 Trustee filed an application with the Court to retain BluePrint HealthCare Real Estate Advisors, LLC ("BluePrint") to assist him with the marketing and sale of the Purchased Assets, which application was approved by order of the Court (Docket No. 293). The Chapter 11 Trustee, with the assistance of BluePrint and in consultation with the Committee and Oxford, intends to implement a Sale Process that will be competitive and result in maximum value for the Estate.  BluePrint has and will, among other things, (a) assist the

---

[1] The dollar amounts of the administrative and unsecured claims are good faith estimates for informational purposes and the amounts are subject to change.

#29649523 v3

Chapter 11 Trustee in determining any potential for value enhancement of the Purchased Assets,
(b) advise on appropriate pricing for the Sale of the Purchased Assets, (c) assist the Chapter 11
Trustee in identifying, contacting and screening potential purchasers of the Purchased Assets,
(d) prepare marketing materials designed to enhance the value of the Sale, (e) assist the Chapter
11 Trustee in preparing a due diligence data room and in coordinating the due diligence
investigations of potential purchasers, and (e) use its best efforts in the marketing of the
Purchased Assets.

14.     Parties seeking access to the electronic data room  established by
BluePrint to review due diligence materials will be required to sign the form confidentiality
agreement (the "Confidentiality Agreement") attached as **Exhibit D** hereto.

15.     To date, while the Chapter 11 Trustee's marketing of the Purchased Assets
is underway, no party has reached an agreement with the Chapter 11 Trustee to serve as the
stalking horse bidder (the "Stalking Horse Bidder") for the Purchased Assets.  The Chapter 11
Trustee, in consultation with the Committee and Oxford, however, is seeking to identify a
Stalking Horse Bidder, and the Bidding Procedures allow for the selection of the Stalking Horse
Bidder and provision of a Break-Up Fee in exercise of the Chapter 11 Trustee's discretion, in
consultation with the Committee and Oxford.

16.     The electronic data room will include a form of asset purchase agreement
(the "Purchase Agreement") prepared by the Chapter 11 Trustee, in consultation with the
Committee and Oxford.  In order to be considered for selection as the Stalking Horse Bidder,
Potential Bidders (as defined below) will be required to submit Qualified Bids (as defined below,
except that the Bid Deadline for parties wishing to be selected as the Stalking Horse Bidder shall
be September 16, 2014) to the Chapter 11 Trustee using a form of agreement substantially
similar to the Purchase Agreement, together with a marked copy of such agreement to identify

#29649523 v3

any changes to the standard form Purchase Agreement, no later than September 16, 2014.  The

Chapter 11 Trustee will select the Stalking Horse Bidder (if any), in consultation with the

Committee and Oxford, no later than September 26, 2014 (the "Stalking Horse Selection Date"),

and on such date will file with the Court a notice of the selection of the Stalking Horse Bidder

(the "Stalking Horse Notice"), and a copy of the Stalking Horse Bidder's Purchase Agreement

(the "Stalking Horse Bidder's Purchase Agreement").  The Chapter 11 Trustee will serve the

Stalking Horse Notice upon (i) the Office of the U.S. Trustee; (ii) counsel for Oxford; (iii)

counsel for the Committee; (iv) the United States Department of Justice; (v) Office of the

Attorney General for the State of Nebraska; (vi) known parties having asserted an Interest in the

Purchased Assets; (vii) any other parties known by the Chapter 11 Trustee to have expressed an

interest in a transaction with respect to all or part of the Purchased Assets; and (viii) parties

having requested notices pursuant to Bankruptcy Rule 2002.  The Chapter 11 Trustee may, in

consultation with the Committee and Oxford, extend or reduce the Stalking Horse Selection Date

once or successively but is not obligated to do so.  If the Chapter 11 Trustee amends the Stalking

Horse Selection Date, he shall promptly notify all Potential Bidders of such amendment.

     17.    The Chapter 11 Trustee, in consultation with his professionals, the

Committee and Oxford, has decided to proceed with an auction process for the Purchased Assets

as outlined herein.  The Chapter 11 Trustee is willing to consider a sale of all Purchased Assets

to one or more purchasers.

     18.    In the Chapter 11 Trustee's business judgment, the best course of action is

to seek a sale as expeditiously as possible, due to the limited period of time during which the

Chapter 11 Trustee is authorized to use cash collateral, and the possibility that the Estate's assets

will decrease in value with the passage of time.

#29649523 v3

E.    **The Bidding Procedures**

19.    The Chapter 11 Trustee, with the advice of BluePrint and his counsel, and in consultation with the Committee and Oxford, has devised a competitive bidding process (the "Bidding Process") intended to generate the highest and best value for the Purchased Assets. The Bidding Procedures include the following provisions:[2]

a.    **Potential Bidders.**  To participate in the Bidding Process, each interested person or entity must (i) deliver to BluePrint an executed copy of the Confidentiality Agreement and (ii) be deemed by the Chapter 11 Trustee, after consultation with the Committee and Oxford, to be reasonably likely to be able to fund and complete the consummation of the proposed transaction on terms no less favorable in the aggregate than the terms contained in the Stalking Horse Bidder's Purchase Agreement (or, in the absence of a Stalking Horse Bidder, in the Purchase Agreement) and within the time frame acceptable to the Chapter 11 Trustee , the Committee and Oxford, if selected as the Successful Bidder (as defined below).  As promptly as reasonably possible, the Chapter 11 Trustee will determine and notify the interested person or entity if such person or entity is acceptable and deem such person or entity a "Potential Bidder."

b.    **Qualified Bids.**  A proposal ("Bid") received from a Potential Bidder is a "Qualified Bid" if it:

i.    is received by the Bid Deadline (as defined below);

ii.    provides for the purchase of all or some portion of the Purchased Assets by the Potential Bidder on an "as is, where is" basis;

iii.    includes a copy of a definitive purchase agreement in form and substance substantially similar to the Purchase Agreement (or, if there is a Stalking Horse Bidder's Purchase Agreement, on terms no less favorable in the aggregate than the terms contained in the Stalking Horse Bidder's Purchase Agreement), signed by an authorized representative of such Potential Bidder, in addition to a marked copy of such agreement to reflect the Potential Bidder's modifications to the Purchase Agreement or the Stalking Horse Bidder's Purchase Agreement, as the case may be;

iv.    is not subject to any due diligence or financing contingency, or board or other approval (excluding any necessary regulatory approval that would follow the execution of definitive documentation for such a transaction);

---

[2] In the event of any inconsistencies between the description of the Bidding Procedures contained in this Motion and the language of the Bidding Procedures themselves, in the form attached as Exhibit B to the Bidding Procedures Order, the language of the Bidding Procedures themselves shall govern.

v.     is accompanied by a cash deposit of not less than 5% of the proposed purchase price (the "Required Deposit");

vi.    includes written evidence of an unconditional commitment for financing (by a creditworthy bank or financial institution that shall provide such financing without alteration of conditions or delays) or other evidence of ability, as determined in the reasonable business judgment of the Chapter 11 Trustee in consultation with the Committee and Oxford, to consummate the transaction;

vii.   includes a designation of contracts and/or leases to be assumed and assigned to the Potential Bidder and evidence of the Potential Bidder's ability to perform future obligations under such agreements;

viii.  is reasonably likely (based on availability of financing, regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined below), within a timeframe acceptable to the Chapter 11 Trustee in consultation with the Committee and Oxford; and

ix.    is irrevocable until the earlier of: (a) sixty (60) days after the Court authorizes and approves the Successful Bid, and (b) the closing date of the transaction with the Successful Bidder or Alternate Bidder (as defined below).

A Potential Bidder that makes a Qualified Bid is a "Qualified Bidder." The Chapter 11 Trustee, in his reasonable business judgment, in consultation with the Committee and Oxford, shall determine whether the Bid of a Potential Bidder meets the foregoing requirements to become a Qualified Bid.

c.  **Due Diligence.** The Chapter 11 Trustee may in his reasonable business judgment, and subject to competitive and other business concerns, afford each Potential Bidder (until the date of the Auction) with such access to due diligence materials concerning the Purchased Assets as the Chapter 11 Trustee deems appropriate, after consultation with the Committee and Oxford. Due diligence access may include access to electronic data rooms, on-site inspections, and other matters that a Potential Bidder may reasonably request and as to which the Chapter 11 Trustee, in his reasonable business judgment, may agree.

d.  **Bid Deadline.** A Potential Bidder that desires to make a Bid must deliver written copies of its Bid, via hand delivery or overnight mail, to (i) the Chapter 11 Trustee, c/o his counsel, Baird Holm LLP, 1500 Woodmen Tower 18th and Farnam Streets, Omaha, NE 68102, Attn. T. Randall Wright, Esq., (ii) the Committee, c/o its counsel, Pepper Hamilton LLP, 3000 Two Logan Square, 18th & Arch Streets, Philadelphia, PA 19103, Attn. Francis J. Lawall, Esq., and (iii) Oxford, c/o its counsel, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661, Attn. Kenneth J. Ottaviano, Esq,, so that the Bid is actually received by 12:00 p.m. (Noon) (CDT) on October 9, 2014 (the "Bid

Deadline"). The Chapter 11 Trustee may, in consultation with the Committee and Oxford, extend the Bid Deadline once or successively but is not obligated to do so. If the Chapter 11 Trustee extends the Bid Deadline, he shall promptly notify all Potential Bidders of such extension.

e.   **No Qualified Bids.** If the Chapter 11 Trustee does not receive any Qualified Bids, he shall report the same to the Court and declare the Auction a "failed auction."

f.   **Only One Qualified Bid.** In the event that there is no Stalking Horse Bidder and the Chapter 11 Trustee receives only one Qualified Bid, the Chapter 11 Trustee will not hold the Auction and may instead seek approval of such Qualified Bid and the associated Purchase Agreement at the Sale Hearing. However, in the event that only one Qualified Bid is received, the Chapter 11 Trustee may determine (in consultation with the Committee and Oxford) in his reasonable business judgment that such Qualified Bid is insufficient, and shall have the right to either postpone the Auction and Bid Deadline or declare the Auction a "failed auction."

g.   **Auction Procedure.** If at least one Qualified Bid other than the Stalking Horse Bidder's Qualified Bid is received, the Chapter 11 Trustee shall conduct the Auction on October 20, 2014, at the offices of Baird Holm LLP, 1500 Woodmen Tower, 18th and Farnam Streets, Omaha, NE 68102 at 10:00 a.m. (CDT), or such later time or other place as the Chapter 11 Trustee shall notify all Qualified Bidders. Only Qualified Bidders shall be eligible to participate in the Auction and only Qualified Bidders shall be entitled to make any subsequent Qualified Bids at the Auction. The Chapter 11 Trustee shall not consider a particular Bid unless the bidding party has submitted a Qualified Bid and attends the Auction and the Qualified Bidder's representative at the Auction has authority to bind the Qualified Bidder.

Prior to the start of the Auction, the Chapter 11 Trustee, in consultation with the Committee and Oxford, shall evaluate all Qualified Bids, as well as the Stalking Horse Bidder's Purchase Agreement, and shall determine which Qualified Bid constitutes the best offer for the Purchased Assets (the "Starting Auction Bid"). The Chapter 11 Trustee shall announce the Starting Auction Bid at the start of the Auction.

The Chapter 11 Trustee, after consultation with the Committee and Oxford, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent Qualified Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code or any order of the Court, and (ii) disclosed to each Qualified Bidder at the Auction.

h.   **Minimum Overbids.** The minimum initial overbid and any subsequent overbids must be in increments of at least $50,000 in cash consideration (which amount the Chapter 11 Trustee, in his reasonable business judgment and in consultation the

#29649523 v3

Committee and Oxford, may modify at the Auction) until the Chapter 11 Trustee declares a Successful Bidder.  Any overbid made in response to the bid of the Stalking Horse Bidder must exceed the Stalking Horse Bidder's Bid not only by the above figure of $50,000, but also by the amount of any applicable Break-Up Fee.

i.     **Successful Bidder.**  At the conclusion of the Auction, the Chapter 11 Trustee shall, in consultation with the Committee and Oxford (i) review the Stalking Horse Bidder's Purchase Agreement or any Qualified Bid of the Stalking Horse Bidder, and shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale Process, including those factors affecting the speed and certainty of consummation of the Qualified Bid and (ii) identify the best bid (the "Successful Bid") and the bidder making such Bid (the "Successful Bidder").  In determining the Successful Bidder, the Chapter 11 Trustee, in consultation with the Committee and Oxford, shall consider the Break-Up Fee (if applicable).

If the Chapter 11 Trustee receives at least one Qualified Bid in addition to the Stalking Horse Bidder's Qualified Bid, then, at the Sale Hearing, the Chapter 11 Trustee will seek approval of the Successful Bid, and, at the Chapter 11 Trustee's election, after consultation with the Committee and Oxford, may also seek approval of the next best Qualified Bid (the "Alternate Bid" and, the bidder making such Alternate Bid, the "Alternate Bidder").  The Chapter 11 Trustee's presentation to the Court of the Successful Bid and, if applicable, the Alternate Bid will not constitute the Chapter 11 Trustee's acceptance of either of such Qualified Bids until such Qualified Bids are approved by the Court at the Sale Hearing.  Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Chapter 11 Trustee will be authorized, but not directed, to effect the Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Court.  The Alternate Bid shall remain open until the earlier of (a) sixty (60) days following the entry of the Sale Order or (b) the consummation of the Sale to the Successful Bidder.

On the second business day following the selection of the Successful Bidder, the Chapter 11 Trustee will file with the Court a notice of the selection of the Successful Bidder and the Alternate Bidder (the "Auction Notice"), copies of the Successful Bidder's Purchase Agreement and the Alternate Bidder's Purchase Agreement, and affidavits of the Chapter 11 Trustee and the Successful Bidder in support of the sale of the Purchased Assets to the Successful Bidder.  The Chapter 11 Trustee will serve the Auction Notice upon (i) the Office of the U.S. Trustee; (ii) counsel for Oxford; (iii) counsel for the Committee; (iv) the United States Department of Justice; (v) the Office of the Attorney General for the State of Nebraska; (vi) known parties having asserted an Interest in the Purchased Assets; (vii) any other parties known by the Chapter 11 Trustee to have expressed an

-10-

interest in a transaction with respect to all or part of the Purchased Assets; and (viii) parties having requested notices pursuant to Bankruptcy Rule 2002.

j.   **Return of Deposits.**  All Required Deposits, but excluding the Required Deposits of the Successful Bidder and Alternate Bidder (which, in the case of the Required Deposit of the Alternate Bidder, shall be returned within three (3) business days of the closing of the Sale to the Successful Bidder), shall be returned to Qualified Bidders within five (5) business days after the date of the Auction.

k.   **Sale Hearing.**  The Chapter 11 Trustee shall request that the Court schedule the Sale Hearing on, or as soon as practicable after, October 21, 2014, at which the Chapter 11 Trustee shall seek entry of the Sale Order, among other things, authorizing and approving the proposed transaction with the Successful Bidder, as determined by the Chapter 11 Trustee in consultation with the Committee and Oxford, and in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the Successful Bid.  The Sale Order shall be in form and substance acceptable to the Chapter 11 Trustee, the Successful Bidder, the Committee, and Oxford.

20.   Based on the foregoing and upon approval of the Bidding Procedures, the following timeline would be established:

(i)   Issuance of Notice of Auction and Sale Hearing - within three (3) business days following entry of the Bidding Procedures Order

(ii)   Issuance of Cure Notice (as defined below) regarding Executory Contracts- within three (3) business days following entry of the Contract Procedures Order

(iii)   Stalking Horse Selection Date – on or before September 26, 2014

(iv)   Issuance of Stalking Horse Notice – on or before September 26, 2014

(v)   Sale and Cure Objections Deadline – October 17, 2014 at 4:00 p.m. (CDT)

(vi)   Deadline to Submit Qualified Bids – October 9, 2014 at 12:00 p.m. (CDT)

(vii)   Auction – October 20, 2014 at 10:00 a.m. (CDT)

(viii)  Proposed Sale Hearing – October 21, 2014

#29649523 v3

F.     **The Notice Procedures**

21.     The Chapter 11 Trustee proposes the following Notice Procedures in

connection with the Auction and Sale:

a.     **Notice.** The Chapter 11 Trustee will give notice (the "<u>Notice of Auction and Sale Hearing</u>") within three (3) business days after the entry of the Bidding Procedures Order of the Bidding Procedures, the time and place of the Auction, the time and place of the Sale Hearing, and the objection deadline for the Sale Hearing by sending a notice, substantially in the form attached hereto as **<u>Exhibit E</u>**, to (i) the Office of the U.S. Trustee; (ii) counsel for Oxford; (iii) counsel for the Committee; (iv) the Internal Revenue Service, (v) all applicable federal, state, and local taxing authorities having jurisdiction over the Purchased Assets; (vi) the Counterparties; (vii) the United States Department of Justice; (viii) Office of the Attorney General for the State of Nebraska; (ix) known parties having asserted an Interest in the Purchased Assets; (x) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (xi) any other parties known by the Chapter 11 Trustee to have expressed an interest in a transaction with respect to all or part of the Purchased Assets (collectively, the "<u>Notice Parties</u>").

b.     **Objections.** The Notice of Auction and Sale Hearing will specify that objections to the relief requested by this Motion, including objections relating to the assumption or assignment of any unexpired lease or executory contract, shall be set forth in writing and specify with particularity the grounds for such objections or other statements of position, and shall be filed with the Court and served so as to be actually received by 4:00 p.m. (CDT) on the date that is four (4) days prior to the Sale Hearing (the "<u>Objection Deadline</u>"), on:  (i) the Chapter 11 Trustee, c/o his counsel, Baird Holm LLP, 1500 Woodmen Tower 18th and Farnam Streets, Omaha, NE 68102, Attn. T. Randall Wright, Esq., (ii) the Committee, c/o its counsel, Pepper Hamilton LLP, 3000 Two Logan Square, 18th & Arch Streets, Philadelphia, PA 19103, Attn. Francis J. Lawall, Esq., (iii) Oxford, c/o its counsel, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661, Attn. Kenneth J. Ottaviano, Esq, and (iv) the Office of the U.S. Trustee, Roman L. Hruska U.S. Courthouse, 111 S. 18th Plaza, Suite 1148, Omaha, NE 68102 (collectively, the "<u>Objection Service Parties</u>").  The Chapter 11 Trustee requests that the Court order that the failure to file and serve objections by the Objection Deadline and in accordance with the foregoing procedure shall be deemed a waiver of such objections and the objecting party shall be forever barred from asserting such objections with respect to the consummation and closing of the Sale, including, without limitation, any objections relating to the proposed assumption and assignment of any agreement.  The Notice of Auction and Sale Hearing will further state that any objections filed and served in accordance with the foregoing procedure will be heard by the Court at the Sale Hearing, except that an objection to the assumption and assignment of a particular contract or contracts may be adjourned by agreement of the objecting contract counterparty, the Chapter 11 Trustee, and the Successful Bidder.

-12-

G.      **Assumption and Assignment of Executory Contracts and/or
        Unexpired Leases**

22.     In conjunction with the Sale, the Chapter 11 Trustee will seek to assume

and assign to the Successful Bidder certain agreements identified in the Successful Bid.

23.     As set forth in the Trustee's  Motion For Entry Of An Order Authorizing

Procedure And Notice For Assumption And Assignment Of Executory Contracts And Unexpired

Leases, within three (3) business days after entry of the Contract Procedures Order, the Chapter

11 Trustee shall file and serve upon counterparties to the Debtor's executory contracts and

unexpired leases (the "Counterparties") a notice substantially in the form attached to that motion

as **Exhibit A** (the "Cure Notice), informing Counterparties that the Debtor's executory

contracts and unexpired leases may be assumed and assigned, and setting forth what the Debtor's

records show to be the applicable cure amounts, if any (the "Cure Amounts").

24.     All objections to the relief sought at the Sale Hearing, including objections

to the Cure Amounts and objections to the proposed assumption and assignment of the

agreements identified in any bid, must: (i) be in writing; (ii) state with specificity the nature of

such objection (with appropriate documentation in support thereof); (iii) comply with the

Bankruptcy Rules and the Local Rules; and (iv) be filed with this Court and served upon (so as to

be received by) the Objection Service Parties on or before the Objection Deadline.

25.     A party failing to file and serve a timely objection, on or before the

Objection Deadline, to the Cure Amounts and/or the assumption and assignment of any

executory contract or unexpired lease shall be forever barred from objecting to the Cure

Amounts and/or assumption and assignment, and will be deemed to consent to the Cure Amounts

and/or assumption and assignment.  In the event that a timely objection to the Cure Amounts

and/or assumption and assignment of any executory contract or unexpired lease is filed, and the

-13-

parties are unable to consensually resolve the dispute prior to the Sale Hearing, such objection
will be determined at the Sale Hearing or such other date and time as may be fixed by this Court,
and any such dispute can be adjourned by agreement of the objecting contract counterparty, the
Chapter 11 Trustee, and the Successful Bidder without deferring Court approval of the Sale at
the Sale Hearing.

## RELIEF REQUESTED

26.    The Chapter 11 Trustee seeks expedited entry of the Bidding Procedures
Order:  (a) approving the Bidding Procedures, (b) approving a Break-Up Fee, to be granted to the
Stalking Horse Bidder at the Chapter 11 Trustee's discretion in consultation with the Committee
and Oxford, (c) scheduling the Auction and Sale Hearing, (d) approving the Notice Procedures,
and (e) granting certain related relief.

27.    In addition, at the conclusion of the Sale Hearing, the Chapter 11 Trustee
will seek entry of the Sale Order:  (i) authorizing the sale of the Purchased Assets to the
Successful Bidder, (ii) authorizing the assumption and assignment of any designated executory
contract(s) and/or unexpired lease(s), and (iii) granting certain related relief.

## BASIS FOR REQUESTED RELIEF

**A.    The Bidding Procedures Should Be Approved.**

28.    The Bidding Procedures are designed to generate the highest and best bid
for the Estate's assets by facilitating a competitive Bidding Process in which all Potential
Bidders are encouraged to participate and submit competing Qualified Bids.

29.    This Motion provides Potential Bidders with more than the twenty-one
(21) days' notice of the Sale Hearing required by Bankruptcy Rule 2002, and provide Potential
Bidders with sufficient opportunity to acquire the information necessary for submission of a
timely and informed Qualified Bid.

-14-

30.     The Debtor's business operates in a very specialized and sophisticated

industry.  The Chapter 11 Trustee, aided by the expertise of BluePrint and in consultation with

the Committee and Oxford, is familiar with many of the parties who may have a realistic interest

in bidding for the Purchased Assets.  Thus, the Chapter 11 Trustee believes that the

approximately four (4) month period between the appointment of the Chapter 11 Trustee and the

Bid Deadline will provide a sufficient period of time in which to generate for the benefit of the

Estate the highest and best offer for the Purchased Assets.

**B.     The Break-Up Fee Should Be Approved.**

31.     Although the Chapter 11 Trustee does not presently have a Stalking Horse

Bidder, he anticipates that one will emerge.  The Chapter 11 Trustee believes, in the exercise of

his business judgment and based on consultation with BluePrint, that having the ability to offer a

reasonable break-up fee not in excess of 2.5% of the bid in question (the "Break-Up Fee") to a

Stalking Horse Bidder prior to the Auction may assist the Chapter 11 Trustee in generating the

highest and best offer for the benefit of the Estate.  The Chapter 11 Trustee may elect not to grant

any Break-Up Fee, but seeks the authority to grant a Break-Up Fee in the Chapter 11 Trustee's

discretion in consultation with the Committee and Oxford.  The Chapter 11 Trustee is requesting

this authority at this time to avoid the potential uncertainty, cost and delay of negotiating break-

up fee protections with a potential Stalking Horse Bidder and then having to schedule another

noticed hearing.

32.     A break-up fee is "designed to compensate the unsuccessful bidder for the

risk and costs incurred in advancing the competitive bidding process."  AgriProcessors, Inc. v.

Fokkena (In re Tama Beef Packing, Inc.), 321 B.R. 496, 497-98 (B.A.P. 8th Cir. 2005).  In the

context of an asset sale, expense reimbursements and break-up fees are presumptively

-15-

appropriate under the business judgment rule.  See, In re Integrated Resources Inc., 135 B.R.

746, 751 (Bankr. S.D.N.Y. 1992), aff'd 147 B.R. 650 (S.D.N.Y. 1992).

33.     A Break-Up fee of 2.5% is within the range which courts typically find to

be reasonable break-up fees.  Tama Beef, 321 B.R. at 498 ("break-up fees are, as the bankruptcy

court correctly concluded, usually limited to one to four percent of the purchase price"); see, e.g.,

Integrated Resources, 135 B.R. at 662 (3.3% cited as the industry standard in New York cases).

34.     The Break-Up Fee would allow the Chapter 11 Trustee to have the

discretion to grant such protections, if necessary, to incentivize a potential Stalking Horse Bidder

without incurring the additional cost and delay of having to prosecute an additional motion.

35.     The Chapter 11 Trustee should be permitted, in the exercise of his

business judgment, following consultation with the Committee and Oxford, to offer a Break-Up

Fee of not more than 2.5% of a Stalking Horse Bidder's proposed bid in order to preserve the

value of the Estate, promote more competitive bidding, and maximize the value of the Purchased

Assets.  Accordingly, the Chapter 11 Trustee requests that the Court authorize him to provide, in

the Chapter 11 Trustee's discretion, the Break-Up Fee to a Stalking Horse Bidder.

**C.     The Sale Should Be Approved Pursuant to 11 U.S.C. § 363(b) and (d).**

36.     Section 363(b)(l) of the Bankruptcy Code provides: "The trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  A court should approve a trustee's sale or use of assets outside of the

ordinary course of business if the trustee demonstrates a sound business justification for the

proposed transaction.  See, e.g., In re Martin. 91 F.3d 389, 395 (3d Cir. 1996); In re Abbott's

Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986).  Once the trustee articulates a valid business

justification, "[t]he business judgment rule 'is a presumption that in making a business decision

the directors of a corporation acted on an informed basis, in good faith and in the honest belief

-16-

that the action taken was in the best interests of the company.'" In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. 111. 1995); In re Integrated Res., Inc.. 147 B.R. 650, 656 (S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a debtor's management decisions").

37.     Section 363(d)(1) provides that the trustee may use, sell or lease property "in the case of a debtor that is a corporation or trust that is not a moneyed business, commercial corporation, or trust, only in accordance with nonbankruptcy law applicable to the transfer of property by a debtor that is such a corporation or trust." 11 U.S.C. § 363(d)(1).  The Debtor is not a moneyed businesses, commercial corporations, or trusts, but rather is a 501(c)(3) tax-exempt, charitable Nebraska nonprofit corporation and accordingly shall also comply with applicable nonbankruptcy law regarding transfer of the Purchased Assets.  The Chapter 11 Trustee shall provide the Notice of Auction and Sale Hearing, the Stalking Horse Notice (if any), and the Auction Notice to the Office of the Attorney General for the State of Nebraska.

38.     The Chapter 11 Trustee has a sound business justification for selling the Purchased Assets at this time and in the proposed manner.  The fairness and reasonableness of the consideration to be paid for the Purchased Assets, as may be declared at the Sale Hearing, will be conclusively demonstrated by exposure to the marketplace.  The Chapter 11 Trustee, in consultation with the Committee and Oxford, has proposed a fair and open Sale Process for attracting the highest and best value for the Purchased Assets.

39.     Due to the specialized nature of the Debtor's business, and the limited authority of the Chapter 11 Trustee to use cash collateral, the Chapter 11 Trustee may not be able to continue operations for a significant period of time.  In addition, preservation of the Estate's assets, including the facilities at which the Skyline Retirement Community operates, for a lengthy period of time would require the Chapter 11 Trustee to incur substantial administrative

-17-

expenses for the Estate.  Consequently, the prudent course for the Chapter 11 Trustee is to proceed with a formal sale process as expeditiously as possible.  Particularly in light of these circumstances, the Chapter 11 Trustee's proposed sale process demonstrates sound business judgment, and represents the best path to providing maximum value for the Estate and the creditors thereof.

40.     Moreover, the Sale of the Purchased Assets will be subjected to a competitive Bidding Process, enhancing the Chapter 11 Trustee's ability to receive the highest and best offer for the Purchased Assets.  Consequently, the fairness and reasonableness of the consideration to be received by the Chapter 11 Trustee and the Estate will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether the Chapter 11 Trustee is receiving a fair and reasonable price for the Purchased Assets.

41.     In addition, the Chapter 11 Trustee's service of the Notice of Auction and Sale Hearing, the Stalking Horse Notice (if any), and the Auction Notice is reasonably calculated to provide timely and adequate notice to the Estate's major creditor constituencies, those parties most interested in this case (including the Office of the Attorney General for the State of Nebraska), those parties potentially interested in bidding on the Purchased Assets, and others whose interests are potentially affected by the proposed Sale.

42.     Accordingly, consummating the Sale expeditiously and in the manner proposed by the Chapter 11 Trustee is in the best interest of the Estate and the Court may reduce any notice periods pursuant to Bankruptcy Rule 9006(d).

**D.    The Sale Should be Made Free and Clear of Interests Pursuant to 11 U.S.C. § 363(f).**

43.    Section 363(f) of the Bankruptcy Code permits a trustee to sell assets free and clear of all Interests (with any such Interests attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

44.    Under section 363(f), a trustee may sell all or any part of the debtor's property fee and clear of any and all liens, claims, or interests in such property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such a lien, claim, or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

45.    As section 363(f) is written in the disjunctive, a trustee need only meet one of the five conditions of section 363(f).  The Chapter 11 Trustee will be able to demonstrate at the Sale Hearing that one or more of these conditions will be satisfied with respect to each party holding a lien on or security interest in any of the Purchased Assets.  At a minimum, the Chapter 11 Trustee expects that the second and fifth of these requirements will be satisfied.[3]

**E.    The Successful Bidder Should Receive the Protections of 11 U.S.C. § 363(m).**

46.    Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse

---

[3] Further, courts concluding that section 363(f) of the Bankruptcy Code does not empower them to convey assets free and clear of claims have found that section 105(a) of the Bankruptcy Code provides the requisite authority.  See Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of liens does not prevent such a sale, as the court's authority to permit such a sale is implicit in the court's equitable power when necessary to carry out the provisions of the Bankruptcy Code).

claims.  See In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir. 1993); In re

Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985); In re Congoleum Corp., No. 03-

51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).

47.     In response to any objection, in addition to the affidavits filed by the

Chapter 11 Trustee and the Successful Bidder, the Chapter 11 Trustee will present facts at the

Sale Hearing demonstrating that any Successful Bidder for the Purchased Assets has negotiated

at arm's-length, and that all parties were represented by their own counsel.

48.     Accordingly, the Sale Order includes a provision that the Successful

Bidder for the Purchased Assets is a "good faith" purchaser within the meaning of section

363(m) of the Bankruptcy Code.  The Chapter 11 Trustee believes that providing any Successful

Bidder with such protection will ensure that the Estate will receive the maximum possible price

for the Purchased Assets.

### F.    Relief from Bankruptcy Rule 6004(h) and 6006(d) is Warranted.

49.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale,

or lease of property ... is stayed until the expiration of 14 days after the entry of the order, unless

the court orders otherwise."  Bankruptcy Rule 6006(d) provides that an "order authorizing the

trustee to assign and executory contract or unexpired lease . . . is stayed until the expiration of 14

days after the entry of the order, unless the court orders otherwise."  The Chapter 11 Trustee

requests that the Court waive these 14-day stays and provide for the Sale Order be effective

immediately.

50.     The purpose of Rule 6004(h) and 6006(d) is to provide sufficient time for

an objecting party to appeal before an order can be implemented.  See Advisory Committee

Notes to Fed. R. Bankr. P. 6004(h).  Although Rule 6004(h) and 6006(d) and the Advisory

Committee Notes are silent as to when a court should "order otherwise" and waive the 14-day

stays, the leading bankruptcy treatise suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY 16th Ed. Rev., ¶ 6004.11 at 6004-20 (2014).  The treatise further suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

51.     As described above, time is of the essence.  The Chapter 11 Trustee may not have sufficient access to funds to secure and maintain the Purchased Assets significantly beyond the contemplated time frame for this Sale Process.  Accordingly, the Chapter 11 Trustee needs to move as expeditiously as possible in order to prevent deterioration in the value of the Estate's assets.  Consequently, a waiver of the Bankruptcy Rule 6004(h) and 6006(d) stays are in the best interest of the Estate.

## NOTICE

Notice of this Motion is being given to the Notice Parties.  In light of the nature of the relief requested, the Chapter 11 Trustee respectfully submits that no further notice is necessary.

WHEREFORE, the Chapter 11 Trustee respectfully requests that the Court enter the Bidding Procedures Order substantially in the form attached hereto as **Exhibit A**: (i) approving the Bidding Procedures, (ii) scheduling the Auction and Sale Hearing, (iii) approving the Notice Procedures, (iv) approving the Break-Up Fee, and (v) granting related relief; and after a Sale Hearing, enter the Sale Order substantially in the form attached hereto as **Exhibit C**: (i) approving the sale of the Purchased Assets to the Successful Bidder, (ii) authorizing the

#29649523 v3

assumption and assignment of any designated agreements, and (iii) granting certain related relief

and such other relief as the Court may deem appropriate.

Date:   August 20, 2014                    Respectfully submitted,

                                           BAIRD HOLM LLP

                                           /s/ T. Randall Wright
                                           T. Randall Wright (NE #16398)
                                           Brandon R. Tomjack (NE #22981)
                                           1700 Farnam Street
                                           Suite 1500
                                           Omaha, NE 68102-2068
                                           Tel: 402-344-0500
                                           Fax: 402-344-0588

                                           Email: btomjack@bairdholm.com
                                                  rwright@bairdholm.com

                                           *Counsel to Ron Ross, Chapter 11 Trustee*

DOCS/1286411.4

#29649523 v3

## EXHIBIT A

**BIDDING PROCEDURES ORDER**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SKYLINE MANOR, INC. | ) | Case No. 14-80934 (TLS) |
| | ) | |
| Debtor. | ) | |

**ORDER GRANTING CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE ESTATE'S ASSETS, (B) APPROVING BREAK-UP FEE, (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE PROPOSED SALE, AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

This matter comes before the Court upon consideration of the Chapter 11 Trustee's Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially all of the Estate's Assets, (B) Approving Break-Up Fee, (C) Scheduling an Auction and Hearing to Consider the Proposed Sale and (D) Approving the Form and Manner of Notice Thereof; (II) an Order (A) Approving the Sale and (C) Granting Certain Related Relief (the "Bid Procedures Motion")[1] seeking, among other things, entry of an order: (i) approving the Bidding Procedures in connection with the Sale, (ii) approving the Break-Up Fee, (iii) scheduling an Auction and hearing to approve the Sale, (iv) approving the form and manner of notice thereof, and (v) granting related relief.  After due deliberation and having determined that the relief requested in the Bid Procedures Motion regarding the Sale Process is in the best interest of the Estate, and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:[2]**

---

[1] All capitalized terms used, but not otherwise defined, in this Order shall have the meanings given in the Bid Procedures Motion.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To

#29648307 v3

A.      The Court has jurisdiction over the Bid Procedures Motion pursuant to 28 U.S.C.

§ 1334.  This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the

relief requested herein are sections 105, 363, 365, 503, and 507 of title 11 of the United States

Code (11 U.S.C. §§ 101 *et seq.* as amended, the "Bankruptcy Code") and Rules 2002, 6004,

6006, 9006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Rule 6004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the

District of Nebraska (the "Local Rules").

B.      Notice of the Bid Procedures Motion, having been given to the Notice Parties, is

sufficient in light of the circumstances and the nature of the relief requested in the Bid

Procedures Motion.

C.      The Chapter 11 Trustee has articulated good and sufficient reasons for this Court

to grant the relief requested in the Bid Procedures Motion regarding the Sale Process, including

without limitation, (i) approval of the Bidding Procedures and the Break-Up Fee; and (ii)

approval of, and authorization to serve, the Notice of Auction and Sale Hearing and the Cure

Notice.

D.      The Break-Up Fee, if applicable, to be paid under the circumstances described in

the Bid Procedures Motion to a Stalking Horse Bidder is (i) an actual and necessary cost and

expense of preserving the Estate, within the meaning of sections 503(b) and 507(a)(2) of the

Bankruptcy Code, (ii) commensurate to the real and substantial benefit conferred upon the Estate

by a Stalking Horse Bidder, (iii) reasonable and appropriate, in light of the size and nature of the

proposed Sale and comparable transactions, the commitments that have been made and the

---

the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the
extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

efforts that have been and will be expended by a Stalking Horse Bidder, and (iv) necessary to induce a Stalking Horse Bidder to continue to pursue the Sale and to continue to be bound by the Stalking Horse Bidder's Purchase Agreement.

E.      The Break-Up Fee, if applicable, is a material incentive to a potential Stalking Horse Bidder to submit a bid that will serve as a minimum or floor bid.  A Stalking Horse Bidder will provide a material benefit to the Estate by increasing the likelihood that the best possible price under the circumstances for the Purchased Assets will be received.  Accordingly, the Bidding Procedures and the Break-Up Fee are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Estate.

F.      The Notice of Auction and Sale Hearing and the service thereof, and the service of the Cure Notice on the Counterparties, are calculated to provide all interested parties with timely and proper notice of the Sale, the Sale Hearing, the Auction, and the Cure Amounts.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit A**, are hereby approved and fully incorporated into this Order.  The Chapter 11 Trustee is authorized to undertake any and all actions necessary or appropriate to implement the Bidding Procedures.

2.      Objections, if any, to the relief requested in the Bid Procedures Motion that have not been withdrawn, waived, or settled are hereby overruled.

3.      The Chapter 11 Trustee is authorized to designate a Stalking Horse Bidder and, at his discretion following consultation with the Committee and Oxford, offer the Break-Up Fee in accordance with the terms of the Bid Procedures Motion.  No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fees, "topping," termination or other similar fee or payment.

4.      The Notice of Auction and Sale Hearing, substantially in the form attached hereto as **Exhibit B**: (i) is hereby approved; and (ii) shall be served, together with a copy of this Order, within three (3) business days of entry of this Order upon each of the Notice Parties.

5.      Subject to the Bidding Procedures, if the Chapter 11 Trustee does not receive any Qualified Bids, the Chapter 11 Trustee shall report the same to the Court and declare the Auction a "failed auction."  In the event that there is no Stalking Horse Bidder and the Chapter 11 Trustee receives only one Qualified Bid, the Chapter 11 Trustee will not hold the Auction and may instead seek approval of such Qualified Bid and the associated Purchase Agreement at the Sale Hearing.  However, in the event only one Qualified Bid is received, the Chapter 11 Trustee may determine (in consultation with the Committee and Oxford) in his reasonable business judgment that such Qualified Bid is insufficient, and shall have the right to either postpone the Auction and Bid Deadline or declare the Auction a "failed auction."  As further described in the Bidding Procedures, in the event that the Chapter 11 Trustee timely receives at least one Qualified Bid other than the Stalking Horse Bidder's Qualified Bid, the Chapter 11 Trustee shall conduct the Auction on October 20, 2014 (the "Auction Date") at 10:00 a.m. (CDT) at the offices of Baird Holm LLP, 1500 Woodmen Tower, 18th and Farnam Streets, Omaha, NE 68102, or such later time or other place as the Chapter 11 Trustee shall notify all Qualified Bidders.

6.      Any person wishing to submit a higher or better offer for the Purchased Assets must do so in accordance with the terms of the Bidding Procedures.

7.      All bidders submitting a Qualified Bid are deemed to have submitted to exclusive jurisdiction of the Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Purchased Assets.

-5-

8.      The Chapter 11 Trustee is hereby authorized to conduct the Sale without

complying with any state or local bulk transfer law or requirements.

9.      Objections, if any, to the Chapter 11 Trustee's proposed Cure Amounts, and to the

assumption and assignment of any executory contract and/or unexpired lease, must: (i) be in

writing; (ii) state with specificity the grounds for such objection (with appropriate documentation

in support thereof); (iii) comply with the Bankruptcy Rules and the Local Rules; and (iv) be filed

with this Court and served upon the Objection Service Parties so as to be actually received by

4:00 p.m. (CDT) on the date that is four (4) days prior to the Sale Hearing (the "Objection

Deadline").

10.     Any party failing to timely file an objection, on or before the Objection Deadline,

to the Cure Amounts and/or assumption and/or assignment of any executory contract or

unexpired lease shall be forever barred from objecting to the Cure Amounts and/or to such

assumption and/or assignment, and will be deemed to consent to the Cure Amounts and/or

assumption and assignment of such executory contract or unexpired lease.  Objections, if any, to

the Cure Amounts and assumption and/or assignment of executory contracts or unexpired leases

shall be heard at the Sale Hearing, except that any the hearing on any such objection can be

adjourned by the agreement of the objecting Counterparty, the Chapter 11 Trustee, and the

Successful Bidder.

11.     The Sale Hearing is scheduled to be held on _____, 2014 at

_____:____ ____.m. (CDT) before the Honorable Thomas L. Saladino, Chief United States

Bankruptcy Judge, at the Roman L. Hruska Courthouse, 111 South 18th Plaza, Suite 1125,

Omaha, NE 68102.  The Chapter 11 Trustee will seek the entry of the Sale Order at the Sale

Hearing approving and authorizing the Sale to the Successful Bidder or Alternate Bidder, on

-6-

terms and conditions consistent with the Purchase Agreement of the Successful Bidder or

Alternate Bidder, as the case may be, as may be amended and/or modified by agreement between

the Chapter 11 Trustee and the Successful Bidder or Alternate Bidder.  The Sale Order shall be

in form and substance acceptable to the Chapter 11 Trustee, the Successful Bidder, the

Committee, and Oxford.

12.    Objections, if any, to the relief requested in the Bid Procedures Motion as it

relates to the Sale must: (i) be in writing and filed with this Court; (ii) comply with the Federal

Rules of Bankruptcy Procedure and the Local Rules; and (iii) be filed and served upon the

Objection Service Parties so as to be actually received by the Objection Deadline.

13.    The failure of any person or entity to timely file an objection, on or before the

Objection Deadline, to the Bid Procedures Motion shall be a bar to the assertion, at the Sale

Hearing or thereafter, of any objection to the Sale of the Purchased Assets to the Successful

Bidder or Alternate Bidder.

14.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or

6006(d), this Order shall be immediately effective and enforceable upon its entry.

15.    All time periods set forth in this Order shall be calculated in accordance with

Bankruptcy Rule 9006(a).

16.    To the extent that any provisions of this Order may be inconsistent with the Bid

Procedures Motion, the terms of this Order shall control.

_____
Honorable Thomas L. Saladino
Chief U.S. Bankruptcy Judge

Dated: _____, 2014

-7-

#29648307 v3

## **Exhibit A**

**Bidding Procedures**

#29648307 v3

**<u>Exhibit B</u>**

**Notice of Auction and Sale Hearing**

#29648307 v3

**<u>Exhibit C</u>**

**Cure Notice**

DOCS/1286413.2

C-1

# EXHIBIT B

## BIDDING PROCEDURES

## Bidding Procedures

Ron Ross, in his capacity as chapter 11 trustee (the "**Chapter 11 Trustee**") for Skyline Manor, Inc. (the "**Debtor**"), in a bankruptcy proceeding presently pending in the United States Bankruptcy Court for the District of Nebraska (the "**Court**"), captioned *In re: Skyline Manor, Inc.* Case No. 14-80934 (TLS), contemplates the sale (the "**Sale**") of all or substantially all of the assets of the Debtor's estate (the "**Purchased Assets**") to one or more purchasers pursuant to section 363 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.* as amended, the "**Bankruptcy Code**").

In connection with the Sale, these bidding procedures (the "**Bidding Procedures**") were approved by order of the Court dated _____, 2014 (the "**Bidding Procedures Order**").[1]  The proposed Sale is subject to approval by the Court.

## The Bidding Process

These Bidding Procedures describe, among other things, the manner in which prospective bidders may gain access to due diligence materials concerning the Purchased Assets, the manner in which bidders and bids become Qualified Bidders (as defined below) and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any Auction (as defined below), the ultimate selection of the Successful Bidder and Successful Bid (each as defined below), and the Court's approval thereof (collectively, the **"Bidding Process").**

Neither the Chapter 11 Trustee nor his representatives shall be obligated to furnish any information of any kind whatsoever to any person who is not a Qualified Bidder (defined below). In the exercise of his reasonable business judgment, and in consultation with the Official Committee of Unsecured Creditors (the "**Committee**") and Oxford Finance, LLC ("**Oxford**"), the Chapter 11 Trustee may amend these Bidding Procedures in writing or orally at the Auction, so as to better promote the goals of the Bidding Process, so long as such changes are not inconsistent with any Court order, including the Bidding Procedures Order.

## "As Is, Where Is"

The sale of the Purchased Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind by the Debtor, the Chapter 11 Trustee, or their respective agents.

## Free and Clear of Any and All Claims and Interests

All of the right, title, and interest of the Debtor's estate (the "**Estate**") in and to the Purchased Assets, or any portion thereof, to be acquired, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the **"Interests"),** with such Interests to attach to the net proceeds

---

[1] Capitalized terms used, but not otherwise defined, in these Bidding Procedures shall have the meanings given in the Bidding Procedures Order.

of the sale of such Purchased Assets, except, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder.

## Participation Requirements

Unless otherwise ordered by the Court, in order to participate in the Bidding Process each person (such person or entity, a **"Potential Bidder"),** must

(i)     deliver, unless previously delivered, to BluePrint HealthCare Real Estate Advisors, LLC ("**BluePrint**") an executed Confidentiality Agreement (to be delivered prior to the distribution of any confidential information by the Chapter 11 Trustee to such person); and

(ii)     be deemed by the Chapter 11 Trustee, after consultation with the Committee and Oxford, to be reasonably likely to be able to fund and complete the consummation of the proposed transaction within the time frame acceptable to the Chapter 11 Trustee, the Committee, and Oxford if selected as the Successful Bidder (defined below).

As promptly as reasonably possible, the Chapter 11 Trustee will determine and will notify the interested person or entity if such person or entity is acceptable and deem such person or entity a "**Potential Bidder.**"

## Due Diligence

The Chapter 11 Trustee may in his reasonable business judgment, and subject to competitive and other business concerns, afford each Potential Bidder (until the date of the Auction) with such access to due diligence materials concerning the Purchased Assets as the Chapter 11 Trustee deems appropriate, after consultation with the Committee and Oxford. Due diligence access may include access to electronic data rooms, on-site inspections, and other matters that a Potential Bidder may reasonably request and as to which the Chapter 11 Trustee, in his reasonable business judgment, may agree.

Each Qualified Bidder shall be deemed to acknowledge, and shall represent in any Purchase Agreement, that it has had an opportunity to inspect and examine the Purchased Assets and to conduct any and all due diligence prior to making its offer, that it has relied solely upon its own independent reviews, investigations, and/or inspections in submitting its Bid, and, that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the Bidding Process.

## Possible Selection of Stalking Horse Bidder

The Chapter 11 Trustee is seeking to identify the Stalking Horse Bidder for the Purchased Assets. BluePrint has established an electronic data room, which will include, among other information, a form of Purchase Agreement prepared by the Chapter 11 Trustee, in consultation with the Committee and Oxford. In order to be considered for selection as the Stalking Horse Bidder, Potential Bidders will be required to submit Qualified Bids to the Chapter 11 Trustee

using a form of agreement substantially similar to the form Purchase Agreement posted to the data room, together with a marked copy of such agreement to identify any changes to the standard form Purchase Agreement, no later than **September 16, 2014.** The Chapter 11 Trustee will select the Stalking Horse Bidder (if any), in consultation with the Committee and Oxford, no later than **September 26, 2014** (the **"Stalking Horse Selection Date"**). <u>The Chapter 11 Trustee may, in consultation with the Committee and Oxford, extend or reduce the Stalking Horse Selection Date once or successively but are not obligated to do so.</u> If the Chapter 11 Trustee extends or reduces the Stalking Horse Selection Date, he shall promptly notify all Potential Bidders of such modification. On the Stalking Horse Selection Date, the Chapter 11 Trustee will file with the Court a notice of selection of the Stalking Horse Bidder and a copy of the Stalking Horse Bidder's Purchase Agreement.

<u>**Bid Deadline**</u>

A Potential Bidder that desires to make a Bid must deliver written copies of its Bid, via hand delivery or overnight mail, to (i) the Chapter 11 Trustee, c/o his counsel, Baird Holm LLP, 1500 Woodmen Tower 18th and Farnam Streets, Omaha, NE 68102, Attn. T. Randall Wright, Esq., (ii) the Committee, c/o its counsel, Pepper Hamilton LLP, 3000 Two Logan Square, 18th & Arch Streets, Philadelphia, PA 19103, Attn. Francis J. Lawall, Esq., and (iii) Oxford, c/o its counsel, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661, Attn. Kenneth J. Ottaviano, Esq., so that the Bid is actually received by **12:00 p.m. (Noon) (CDT) on October 9, 2014** (the "**Bid Deadline**").

The Chapter 11 Trustee may, in consultation with the Committee and Oxford, extend the Bid Deadline once or successively but is not obligated to do so. If the Chapter 11 Trustee extends the Bid Deadline, he shall promptly notify all Potential Bidders of such extension.

<u>**Qualified Bid Requirements**</u>

A proposal (a "Bid") received from a Potential Bidder is a **"Qualified Bid"** if it:

(i)     is received by the Bid Deadline;

(ii)    provides for the purchase of all or some portion of the Purchased Assets by the Potential Bidder on an "as is, where is" basis;

(iii)   includes a copy of a definitive purchase agreement in form and substance substantially similar to the Purchase Agreement (or, if there is a Stalking Horse Bidder's Purchase Agreement, on terms no less favorable in the aggregate than the terms contained in the Stalking Horse Bidder's Purchase Agreement), signed by an authorized representative of such Potential Bidder, in addition to a marked copy of such agreement to reflect the Potential Bidder's modifications to the Purchase Agreement or the Stalking Horse Bidder's Purchase Agreement, as the case may be;

(iv)    is not subject to any due diligence or financing contingency, or board or other approval (excluding any necessary regulatory approval that would follow the execution of definitive documentation for such a transaction);

#29650513 v2

(v)     is accompanied by a cash deposit of not less than 5% of the proposed purchase price (the "**Required Deposit**");

(vi)     includes written evidence of an unconditional commitment for financing (by a creditworthy bank or financial institution that shall provide such financing without alteration of conditions or delays) or other evidence of ability, as determined in the reasonable business judgment of the Chapter 11 Trustee in consultation with the Committee and Oxford, to consummate the transaction;

(vii)     includes a designation of contracts and/or leases to be assumed and assigned to the Potential Bidder and evidence of the Potential Bidder's ability to perform future obligations under such agreements;

(viii)     is reasonably likely (based on availability of financing, regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined below), within a timeframe acceptable to the Chapter 11 Trustee in consultation with the Committee and Oxford; and

(ix)     is irrevocable until the earlier of: (a) sixty (60) days after the Court authorizes and approves the Successful Bid, and (b) the closing date of the transaction with the Successful Bidder or Alternate Bidder (as defined below).

A Potential Bidder that makes a Qualified Bid is referred to herein as a **"Qualified Bidder."**

The Chapter 11 Trustee, in his reasonable business judgment, in consultation with the Committee and Oxford, shall determine whether the Bid of a Qualified Bidder meets the foregoing requirements to become a Qualified Bid.

### No Qualified Bids

If the Chapter 11 Trustee does not receive any Qualified Bids, he shall report the same to the Court and declare the Auction a "failed auction."

### Only One Qualified Bid

In the event that there is no Stalking Horse Bidder and the Chapter 11 Trustee receives only one Qualified Bid, the Chapter 11 Trustee will not hold the Auction and may instead seek approval of such Qualified Bid and the associated Purchase Agreement at the Sale Hearing. However, in the event that only one Qualified Bid is received, the Chapter 11 Trustee may determine (in consultation with the Committee and Oxford) in his reasonable business judgment that such Qualified Bid is insufficient, and shall have the right to either postpone the Auction and Bid Deadline or declare the Auction a "failed auction."

### Auction

If at least one Qualified Bid other than the Stalking Horse Bidder's Qualified Bid is received, the Chapter 11 Trustee shall conduct the Auction on **October 20, 2014 at 10:00 a.m.**

-4-

**(CDT),** at the offices of Baird Holm LLP, 1500 Woodmen Tower, 18th and Farnam Streets, Omaha, NE 68102, or such later time or other place as the Chapter 11 Trustee shall notify all Qualified Bidders. Only Qualified Bidders shall be eligible to participate in the Auction and only Qualified Bidders shall be entitled to make any subsequent Qualified Bids at the Auction. The Chapter 11 Trustee shall not consider a particular Bid unless the bidding party has submitted a Qualified Bid and attends the Auction and the Qualified Bidder's representative at the Auction has authority to bind the Qualified Bidder.

Prior to the start of the Auction, the Chapter 11 Trustee, in consultation with the Committee and Oxford, shall evaluate all Qualified Bids, as well as the Stalking Horse Bidder's Purchase Agreement, and shall determine which Qualified Bid constitutes the best offer for the Purchased Assets (the **"Starting Auction Bid").** The Chapter 11 Trustee shall announce the Starting Auction Bid at the start of the Auction.

The minimum initial overbid and any subsequent overbids must be in increments of at least $50,000 in cash consideration (which amount the Chapter 11 Trustee, in his reasonable business judgment and in consultation with the Committee and Oxford, may modify at the Auction) until the Chapter 11 Trustee declares a Successful Bidder. Any overbid made in response to the bid of the Stalking Horse Bidder must exceed the Stalking Horse Bidder's Bid not only by the above figure of $50,000, but also by the amount of any applicable Break-Up Fee.

The Chapter 11 Trustee, after consultation with the Committee and Oxford, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent Qualified Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bankruptcy Code or any order of the Court, and (ii) disclosed to each Qualified Bidder at the Auction.

At the conclusion of the Auction, the Chapter 11 Trustee shall, in consultation with the Committee and Oxford (i) review the Stalking Horse Bidder's Purchase Agreement or any Qualified Bid of the Stalking Horse Bidder, and shall review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale Process, including but not limited to those factors affecting the speed and certainty of consummation of the Qualified Bid and (ii) identify the best bid (the **"Successful Bid")** and the bidder making such Bid (the **"Successful Bidder").** In determining the Successful Bidder, the Chapter 11 Trustee, in consultation with the Committee and Oxford, shall consider the Break-Up Fee (if applicable).

If the Chapter 11 Trustee receives at least one Qualified Bid in addition to the Stalking Horse Bidder's Qualified Bid, then, at the Sale Hearing, the Chapter 11 Trustee will seek approval of the Successful Bid and, at the Chapter 11 Trustee's election, after consultation with the Committee and Oxford, may also seek approval of the next best Qualified Bid (the **"Alternate Bid"** and, the bidder making such Alternate Bid, the **"Alternate Bidder").** The Chapter 11 Trustee's presentation to the Court of the Successful Bid and, if applicable, the Alternate Bid will not constitute the Chapter 11 Trustee's acceptance of either of such Qualified Bids until such Qualified Bids are approved by the Court at the Sale Hearing. Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Chapter 11 Trustee will be authorized, but not directed, to effect the Sale to the Alternate Bidder

-5-

subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Court. The Alternate Bid shall remain open until the earlier of (a) sixty (60) days following the entry of the Sale Order or (b) the consummation of the Sale to the Successful Bidder.

On the second business day following the selection of the Successful Bidder, the Chapter 11 Trustee will file with the Court a notice of the selection of the Successful Bidder and the Alternate Bidder (the **"Auction Notice"),** copies of the Successful Bidder's Purchase Agreement and the Alternate Bidder's Purchase Agreement, and affidavits of the Chapter 11 Trustee and the Successful Bidder in support of the sale of the Purchased Assets to the Successful Bidder. The Chapter 11 Trustee will serve the Auction Notice upon (i) the Office of the U.S. Trustee; (ii) counsel for Oxford; (iii) counsel for the Committee; (iv) the United States Department of Justice; (v) the Office of the Attorney General for the State of Nebraska; (vi) known parties having asserted an Interest in the Purchased Assets; (vii) any other parties known by the Chapter 11 Trustee to have expressed an interest in a transaction with respect to all or part of the Purchased Assets; and (viii) parties having requested notices pursuant to Bankruptcy Rule 2002.

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of the Qualified Bidder's proposed purchase agreement.

### The Sale Hearing

A hearing is presently scheduled to take place on _____, 2014 at __:__ _.m. (CDT) (the **"Sale Hearing").** At the Sale Hearing, the Chapter 11 Trustee shall seek entry of the Sale Order, among other things, authorizing and approving the proposed transaction with the Successful Bidder, as determined by the Chapter 11 Trustee in consultation with the Committee and Oxford, and in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the Successful Bid. The Sale Order shall be in form and substance acceptable to the Chapter 11 Trustee, the Successful Bidder, the Committee, and Oxford.

All Required Deposits, but excluding the Required Deposits of the Successful Bidder and Alternate Bidder (which, in the case of the Required Deposit of the Alternate Bidder, shall be returned within three (3) business days of the closing of the Sale to the Successful Bidder), shall be returned to Qualified Bidders within five (5) business days after the date of the Auction.

### Reservation of Rights

The Chapter 11 Trustee reserves the right, in the exercise of his fiduciary obligations, after consultation with the Committee and Oxford, and in the exercise of his reasonable business judgment, to: (a) determine which Qualified Bid, if any, is the highest or otherwise best offer; (b) reject, at any time, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or any other orders applicable to the Estate or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Estate; and (c) modify the Bidding Procedures, including, without limitation, by (1) extending any of the deadlines set forth above for the Bidding Process, (2) modifying bidding increments, (3) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court

#29650513 v2

without prior notice, (4) withdrawing from the Auction the Purchased Assets at any time prior to or during the Auction, and/or (5) canceling the Auction, and rejecting all Qualified Bids if, in the Chapter 11 Trustee's business judgment, and in consultation with the Committee and Oxford, no such bid is for a fair and adequate price.

DOCS/1286415.2

-7-

## **EXHIBIT C**

### **SALE ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SKYLINE MANOR, INC. | ) | Case No. 14-80934 (TLS) |
| | ) | |
| Debtor. | ) | |

## ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE ESTATE'S ASSETS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF

This matter is before the Court on the Chapter 11 Trustee's Motion for Entry of

(I) an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially all of

the Estate's Assets, (B) Approving Break-Up Fee, (C) Scheduling an Auction and Hearing to

Consider the Proposed Sale and (D) Approving the Form and Manner of Notice Thereof; (II) an

Order (A) Approving the Sale, and Granting Certain Related Relief (the "Sale Motion"),[1] and the

Trustee's Motion Chapter 11 trustee's Motion for Entry of an Order Authorizing Procedures and

Notice for Assumption and Assignment of Executory Contracts and Unexpired Leases in

Connection with the Sale of Certain Assets of Skyline Manor (the "Contract Procedures Motion",

seeking, among other things: (a) approval of the Purchase Agreement, as such agreement may

have been amended (the "Final Purchase Agreement"), attached hereto as Exhibit A;

(b) authority to sell the Purchased Assets as set forth in the Final Purchase Agreement free and

clear of Liens (as defined below), Claims (as defined below), and other interests, (c) authority to

assume and assign the Contracts identified as Purchased Assets in the Final Purchase Agreement

(the "Acquired Contracts") to the Purchaser, and (d) related relief; and this Court, in furtherance

---

[1] Unless otherwise defined in this Order, all capitalized terms shall have the meanings provided in the Final Purchase Agreement and the Sale Motion, and to the extent of any inconsistency, the Final Purchase Agreement shall govern.

of the Sale Motion, having entered an order on _____, 2014 (the "Bidding

Procedures Order")(Docket No. _____) approving, among other things, the Bidding Procedures

and the Notice Procedures; and the Chapter 11 Trustee having determined, in consultation with

the Committee and Oxford and after an extensive marketing process, that _____

_____ (the "Purchaser") has submitted the highest and best offer for the Purchased Assets; and

adequate and sufficient notice of the Bidding Procedures, the Final Purchase Agreement, and all

transactions contemplated thereunder and in this Order having been given in the manner directed

by the Court in the Bidding Procedures Order; and all interested parties having been afforded an

opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the

Court having reviewed and considered the Sale Motion and all relief related thereto, and noting

that no objections were filed thereto, and having held a hearing regarding the Sale Motion on

October _____, 2014 (the "Sale Hearing"); and it appearing that the Court has

jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in

the Sale Motion and the Contract Procedures Motion and at the Sale Hearing establish just cause

for the relief granted herein; and after due deliberation; and good and sufficient cause appearing,

**THE COURT HEREBY FINDS AND DETERMINES THAT**:[2]

### Jurisdiction, Final Order, and Statutory Predicates

A.     This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28

U.S.C. § 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] These findings and conclusions constitute the Court's findings of fact and conclusions of law pursuant to
Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact
and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby
incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact
constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law
constitute findings of fact, they are adopted as such.

B.     The statutory predicates for the relief requested in the Sale Motion are sections

105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and

9007, and Local Rule 6004-1.

C.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under

Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by

Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the

implementation of this Order.

### Notice of the Sale and Auction

D.     Actual written notice of the Sale Motion was provided to the Notice Parties.

E.     The Notice of Auction and Sale Hearing was reasonably calculated to provide all

interested parties with timely and proper notice of the Sale, Sale Hearing, and Auction.

F.     As evidenced by the certificates of service previously filed with the Court, proper,

timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, Sale, and the

transactions contemplated thereby have been provided in accordance with the Bidding

Procedures Order, sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules

2002, 6004, 6006, and 9007.  The notices described above were good, sufficient, and appropriate

under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale

Hearing, Sale, and assumption and assignment of the Acquired Contracts is or shall be required.

G.     The disclosures made by the Chapter 11 Trustee concerning the Sale Motion,

Auction, Final Purchase Agreement, Sale, assumption and assignment of the Acquired Contracts,

and Sale Hearing were good, complete, and adequate.

H.     A reasonable opportunity to object and be heard with respect to the Sale and the

Sale Motion and the relief requested therein (including the assumption and assignment of the

Acquired Contracts), has been afforded to all interested persons and entities, including but not necessarily limited to the Notice Parties.

## Good Faith of Purchaser

I.      The Final Purchase Agreement was negotiated, proposed, and entered into by the Chapter 11 Trustee and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

J.      Neither the Chapter 11 Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Final Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among the bidders.

K.      The Purchaser is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia:* (a) the Purchaser recognized that the Chapter 11 Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser complied with the provisions in the Bidding Procedures Order; (c) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) the Purchaser in no way induced or caused the filing of the Bankruptcy Cases; and (e) all payments to be made by the Purchaser in connection with the Sale have been disclosed.

## Highest and Best Offer

L.      The Chapter 11 Trustee conducted an auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order.  The auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any

person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The

auction process was duly noticed and conducted in a non-collusive, fair, and good faith manner,

and a reasonable opportunity was given to any interested party to make a higher and better offer

for the Purchased Assets.

M.      The Final Purchase Agreement constitutes the highest and best offer for the

Purchased Assets, and will provide a greater benefit for the Estate than would be provided by

any other available alternative.  The Chapter 11 Trustee's determination, in consultation with the

Committee and Oxford, that the Final Purchase Agreement constitutes the highest and best offer

for the Purchased Assets constitutes a valid and sound exercise of the Chapter 11 Trustee's

business judgment.

### No Fraudulent Transfer

N.      The consideration provided by the Purchaser pursuant to the Final Purchase

Agreement (i) is fair and reasonable, (ii) is the highest and/or best offer for the Purchased Assets,

and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the

Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the

United States, any State, territory, or possession, or the District of Columbia.  No other person or

entity or group of entities has offered to purchase the Purchased Assets for greater value to the

Estate than the Purchaser.  Approval of the Sale Motion and the Final Purchase Agreement and

the consummation of the transactions contemplated thereby are in the best interest of the Estate.

O.      The Purchaser is not a mere continuation of the Debtor or the Estate and no

continuity of enterprise exists between the Purchaser and the Debtor or the Estate.  The

Purchaser is not holding itself out to the public as a continuation of the Debtor or the Estate.  The

#29648181 v2

Purchaser is not a successor to the Debtor or the Estate and the Sale does not amount to a

consolidation, merger, or de facto merger of the Purchaser and the Debtor or the Estate.

**<u>Validity of Transfer</u>**

P.      The Final Purchase Agreement was not entered into for the purpose of hindering,

delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United

States, any State, territory, or possession, or the District of Columbia.  Neither the Chapter 11

Trustee nor the Purchaser is entering into the transactions contemplated by the Final Purchase

Agreement fraudulently for purposes of statutory and/or common law fraudulent conveyance and

fraudulent transfer laws.

Q.      The Estate is the sole and lawful owner of the Purchased Assets.  Subject to

section 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets to the Purchaser will

be, as of the Closing Date, a legal, valid, and effective transfer of the Purchased Assets, which

transfer vests or will vest the Purchaser with all right, title, and interest of the Estate to the

Purchased Assets free and clear of:  (a) all liens and encumbrances relating to, accruing or

arising any time prior to the Closing Date (collectively, "<u>Liens</u>"), and (b) all claims (as that term

is defined in Section 101(5) of the Bankruptcy Code), liabilities, obligations, demands,

guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any

kind and nature, whether arising prior to or subsequent to the Petition Date, and whether imposed

by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with

respect to Claims and Liens (i) that purport to give to any party a right of setoff or recoupment

against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of

first refusal, purchase or repurchase right or option, or termination of, any of the Estate's or the

Purchaser's interests in the Purchased Assets, or any similar rights, or (ii) in respect of taxes,

restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including,

-6-

without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of

any attributes of ownership) (collectively, as defined in this clause (b), the "Claims"), relating to,

accruing, or arising any time prior to the Closing Date.

### Section 363(f) is Satisfied

R.     The conditions of section 363(f) of the Bankruptcy Code have been satisfied in

full; therefore, the Chapter 11 Trustee may sell the Purchased Assets free and clear of any Liens,

Claims, and other interests in the property.

S.     The Purchaser would not have entered into the Final Purchase Agreement, and

would not consummate the transactions contemplated thereby, if the sale of the Purchased Assets

to the Purchaser were not free and clear of all Liens and Claims.  The Purchaser shall not be

responsible for any Liens or Claims other than Liabilities which have been expressly assumed by

the Purchaser pursuant to the Final Purchase Agreement.

T.     The Chapter 11 Trustee may sell the Purchased Assets free and clear of all Liens

and Claims against the Estate and/or any of the Purchased Assets because, in each case, one or

more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code have been

satisfied.  Those holders of Liens or Claims against the Estate or any of the Purchased Assets

who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed

to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of

Liens or Claims are adequately protected by having their Liens or Claims, if any, in each

instance against the Estate or any of the Purchased Assets, attach to the net cash proceeds of the

Sale ultimately attributable to the particular Purchased Assets in which such creditor alleges a

Lien or Claim, in the same order of priority, with the same validity, force and effect that such

Lien or Claim had prior to the Sale, subject to any claims and defenses that the Estate may

possess with respect thereto.

-7-

**Cure/Adequate Protection**

U.      The assumption and assignment of the Acquired Contracts is integral to the Final

Purchase Agreement, is in the best interest of the Estate, and represents a reasonable exercise of

sound and prudent judgment by the Chapter 11 Trustee.  The Purchaser's promise to perform the

obligations under the Acquired Contracts after the Closing Date shall constitute adequate

assurance of future performance within the meaning of section 365(f)(2)(B) of the Bankruptcy

Code.

V.      Any objections to the assumption and assignment of the Acquired Contracts are

hereby overruled.

**Compelling Circumstances for a Prompt Sale**

W.      Good and sufficient reasons for approval of the Final Purchase Agreement and the

Sale have been articulated.  The relief requested in the Sale Motion is in the best interest of the

Estate.  The Chapter 11 Trustee has demonstrated both (i) good, sufficient, and sound business

purposes and justifications, and (ii) compelling circumstances for the Sale other than in the

ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code in that, among

other things, the prompt consummation of the Sale to the Purchaser is necessary and appropriate

to maximize the value of the Estate.  Time is of the essence in consummating the Sale.

X.      Given all of the circumstances of the bankruptcy case and the adequacy and fair

value of the Purchase Price under the Final Purchase Agreement, the proposed Sale of the

Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Chapter 11

Trustee's business judgment and should be approved.

Y.      The consummation of the Sale and the assumption and assignment of the

Acquired Contracts is legal, valid, and properly authorized under all applicable provisions of the

Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and

-8-

365, and all of the applicable requirements of such sections have been complied with in respect

of the Sale.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED THAT:**

**General Provisions**

1.      The relief requested in the Sale Motion is granted and approved as set

forth herein, and the Sale contemplated in the Sale Motion is approved.

2.      All objections to the Sale Motion or the relief requested therein that have

not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by

stipulation filed with the Court, and all reservations of rights included therein, are hereby denied

and overruled with prejudice.

**Approval of the Final Purchase Agreement**

3.      The Final Purchase Agreement (and all schedules and exhibits affixed

thereto) and all other ancillary documents, all of the terms and conditions thereof, and the

transactions contemplated therein are hereby approved and authorized.

4.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Chapter

11 Trustee is authorized and empowered to take any and all actions necessary or appropriate to:

(i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance

with the terms and conditions of the Final Purchase Agreement and this Order; (ii) close the Sale

as contemplated in the Final Purchase Agreement and this Order; and (iii) execute and deliver,

perform under, consummate, implement, and close fully the Final Purchase Agreement,

including the assumption and assignment to the Purchaser of the Acquired Contracts, together

with all additional instruments and documents that may be reasonably necessary or desirable to

implement the Final Purchase Agreement and the Sale.  The Purchaser shall not be required to

-9-

seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Final Purchase Agreement or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

5.     This Order shall be binding in all respects upon the Debtor, the Chapter 11 Trustee, the Estate, all creditors of, and holders of equity interests in, the Debtor, any holders of Liens, Claims, or other interests in, against, or on all or any portion of the Purchased Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, and the Purchased Assets.  This Order and the Final Purchase Agreement shall inure to the benefit of the Estate and its creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

**Transfer of the Purchased Assets**

6.     Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Chapter 11 Trustee is authorized to transfer the Purchased Assets to the Purchaser on the Closing Date and, upon the Closing under the Final Purchase Agreement, such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest the Purchaser with title to the Purchased Assets and, upon the Chapter 11 Trustee's receipt of the full Purchase Price, shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims, with all such Liens, Claims or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of

-10-

priority, that such Liens, Claims, or interests now have against the Purchased Assets.  Upon the

Closing, the Purchaser shall take title to and possession of the Purchased Assets.

7.      All persons and entities in possession of some or all of the Purchased

Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the

Purchaser or its assignee at the Closing.  On the Closing Date, each of the Estate's creditors is

authorized and directed to execute such documents and take all other actions as may be

reasonably necessary to release its Liens, Claims, or other interests in the Purchased Assets, if

any, as such Liens, Claims, or interests may have been recorded or may otherwise exist.

8.      On the Closing Date, this Order shall be construed and shall constitute for

any and all purposes a full and complete general assignment, conveyance, and transfer of the

Estate's interest in the Purchased Assets.  Each and every federal, state, and local governmental

agency or department is hereby directed to accept any and all documents and instruments

necessary and appropriate to consummate the transactions contemplated by the Final Purchase

Agreement.

9.      A certified copy of this Order may be filed with the appropriate clerk

and/or recorded with the recorder to act to cancel any liens and other encumbrances of record.

10.     If any person or entity that has filed statements or other documents or

agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets shall

not have delivered to the Chapter 11 Trustee prior to the Closing, in proper form for filing and

executed by the appropriate parties, termination statements, instruments of satisfaction, releases

of liens and easements, and any other documents necessary for the purpose of documenting the

release of all Liens, Claims, or other interests that the person or entity has or may assert with

respect to all or any portion of the Purchased Assets, the Chapter 11 Trustee is hereby authorized

-11-

and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets.

11.     This Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims, or other interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.  This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Final Purchase Agreement.

## Assumption and Assignment of Acquired Contracts

12.     The Chapter 11 Trustee is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing of the Sale, the Acquired Contracts free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably deems necessary to assign and transfer the Acquired Contracts.

#29648181 v2

13.     The counterparties to the Acquired Contracts (the "Counterparties") shall look solely to the Purchaser for any amounts payable under the Acquired Contracts from and after the Closing Date.

14.     The Acquired Contracts are executory contracts under section 365 of the Bankruptcy Code.  The Chapter 11 Trustee may assume the Acquired Contracts in accordance with section 365 of the Bankruptcy Code.  The Chapter 11 Trustee may assign the Acquired Contracts in accordance with sections 363 and 365 of the Bankruptcy Code.  Any provisions in the Acquired Contracts that purport to prohibit or condition the assignment of the Acquired Contracts or allow the Counterparties to terminate, recapture, impose any penalty, or modify any term or condition upon the assignment of the Acquired Contracts, constitute unenforceable anti-assignment provisions that are void and of no force and effect; all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Chapter 11 Trustee and assignment to the Purchaser of the Acquired Contracts have been satisfied.  The Acquired Contracts shall be transferred and assigned to, and following the closing of the Sale remain in full force and effect for the benefit of the Purchaser, notwithstanding any provision in the Acquired Contracts (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that purports to prohibit, restrict, or condition such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Estate shall be relieved from any further liability with respect to the Acquired Contracts after such assignment to and assumption by the Purchaser.  Upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all rights and title to the Acquired Contracts.

#29648181 v2

15.     The amounts necessary to cure any defaults existing as of the Closing Date under the Acquired Contracts are the amounts listed on the Cure Notice or, if applicable, such other amount(s) upon which the Chapter 11 Trustee, the Purchaser, and any of the Counterparties may have agreed (the "Cure Amounts").  The Purchaser shall pay the Cure Amounts at Closing, or at such later time as may be mutually agreed upon by the Purchaser and any of the Counterparties.  No other defaults exist under the Acquired Contracts.  The Counterparties waive, release, and are hereby precluded from asserting any claims against the Chapter 11 Trustee, the Debtor, or the Estate for any claims arising out of or in connection with the Acquired Contracts.  The Purchaser shall pay the Cure Amounts to the Counterparties in full satisfaction of the Counterparties' claims for defaults that may have arisen under the Acquired Contracts.

### Prohibition of Actions against the Purchaser

16.     Except as otherwise provided in this Order or the Final Purchase Agreement, the Purchaser shall not have any liability or other obligation to the Estate arising under or related to any of the Purchased Assets.  Without limiting the generality of the foregoing, and except as otherwise provided in this Order or in the Final Purchase Agreement, the Purchaser shall not be liable for any Claims against the Estate, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated.

17.     All persons and entities holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal

-14-

or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent,

liquidated or unliquidated, senior or subordinate), hereby are forever barred, estopped, and

permanently enjoined from asserting against the Purchaser, its affiliates, its successors or

assigns, their property, or the Purchased Assets, such persons' or entities' Liens, Claims, or

interests in and to the Purchased Assets, including, without limitation, the following actions:

(i) commencing or continuing in any manner any action or other proceeding against the

Purchaser, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering

in any manner any judgment, award, decree, or order against the Purchaser, its successors, assets

or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the

Purchaser, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or

recoupment of any kind against any obligation due the Purchaser, or its successors;

(v) commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this Order or other orders of the Court, or the agreements or

actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or

refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased

Assets or conduct any of the businesses operated with the Purchased Assets.  On the Closing

Date, each creditor is authorized and directed to execute such documents and take all other

actions as may be necessary to release Liens, Claims, and other interests in or on the Purchased

Assets, if any, as provided for herein, as such Liens, Claims, or interests may have been recorded

or may otherwise exist.

      18.    All persons and entities are hereby forever prohibited and enjoined from

taking any action that would adversely affect or interfere with the ability of the Chapter 11

Trustee to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Final Purchase Agreement and this Order.

19.    The Purchaser has given substantial consideration under the Final Purchase Agreement for the benefit of the Estate and its creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in, or Claims against, the Estate or any of the Purchased Assets.  The consideration provided by the Purchaser for the Purchased Assets under the Final Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

20.    Nothing in this Order or the Final Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.  Nothing in this Order or the Final Purchase Agreement authorizes the transfer or assignment to the Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without the Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

## Other Provisions

21.    The transactions contemplated by the Final Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and the Sale are duly stayed pending

-16-

such appeal.  The Purchaser is a good faith buyer and, as such, shall have the full protections of

section 363(m) of the Bankruptcy Code.

22.     Pursuant to Federal Rules of Bankruptcy Procedure 7062, 9014, 6004(h),

and 6006(d), this Order shall be effective immediately upon entry and the Chapter 11 Trustee

and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

23.     Nothing in this Order or the Final Purchase Agreement approves or

provides for the transfer to the Purchaser of any avoidance claims (whether under chapter 5 of

the Bankruptcy Code or otherwise) of the Estate.

24.     No bulk sales law or any similar law of any state or other jurisdiction

applies in any way to the Sale.

25.     The Final Purchase Agreement and any related agreements, documents, or

other instruments may be modified, amended, or supplemented by the parties thereto and in

accordance with the terms thereof, without further order of the Court, provided that any such

modification, amendment, or supplement does not have a material adverse effect on the Estate.

26.     The Court shall retain jurisdiction to, among other things, interpret,

implement, and enforce the terms and provisions of this Order and the Final Purchase

Agreement, all amendments thereto and any waivers and consents thereunder and each of the

agreements executed in connection therewith to which the Chapter 11 Trustee is a party or which

has been assigned by the Chapter 11 Trustee to the Purchaser, and to adjudicate, if necessary,

any and all disputes concerning or relating in any way to the Sale, including, but not limited to,

retaining jurisdiction to: (a) compel delivery of the Purchased Assets to the Purchaser;

(b) interpret, implement, and enforce the provisions of this Order; (c) protect the Purchaser

against any alleged Liens, Claims, or other interests in or against the Purchased Assets of any

-17-

#29648181 v2

kind or nature whatsoever; and (d) enter any orders under sections 363 and/or 365 of the

Bankruptcy Code with respect to the Acquired Contracts.

27.     All time periods set forth in this Order shall be calculated in accordance

with Bankruptcy Rule 9006(a).

28.     The failure specifically to reference any particular provision of the Final

Purchase Agreement in this Order shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court that the Final Purchase Agreement is authorized and

approved in its entirety; provided, however, that this Order shall govern if any inconsistency

exists between the Final Purchase Agreement (including all ancillary documents executed in

connection therewith) and this Order.  All of the provisions of this Order are nonseverable and

mutually dependent.

29.     To the extent that this Order is inconsistent with any prior order or

pleading with respect to the Sale Motion, the terms of this Order shall govern.


_____
Honorable Thomas L. Saladino
Chief U.S. Bankruptcy Judge


Dated: _____, 2014

#29648181 v2

**Exhibit A**

**Final Purchase Agreement**

DOCS/1286418.2

#29648181 v2

**Non-Disclosure Agreement**

This Non-Disclosure Agreement (the "Agreement") is entered into this ___ day of
_____, 2014 between and among _____ ("Recipient")
and Ron Ross, duly appointed Chapter 11 Trustee (the "Trustee") of and on behalf of Skyline Manor,
Inc. (the "Company").

WHEREAS, the Company is engaged in the business of providing Skilled Nursing, Personal Care, and
Independent Living Services, and

WHEREAS, on May 8, 2014 (the "Filing Date"), the Company filed a voluntary petition for relief
under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court
for the District of Nebraska (the "Court"), case no. (14-80934) (the "Case"), and

WHEREAS, on May 15, 2014, the Office of the United States Trustee for the District of Nebraska
appointed an official committee of unsecured creditors in the Case (the "Committee"), and

WHEREAS, On May 29, 2014, the Court entered an order appointing the Trustee over the Company,
and

WHEREAS, on May 30, 2014, the United States Trustee filed an application to approve the
appointment of Ron Ross as the Trustee, which application was granted the same day, and

WHEREAS, Oxford Finance, LLC ("Oxford") was lender to the Company prior to the Filing Date and
presently asserts a lien upon the Company's assets, and

WHEREAS, the Trustee is considering a possible purchase by a third party (a "Potential Business
Partner") of all of the assets and business of the Company, (any such purchase or other
transactions, a "Transaction") as may be mutually agreed between a Potential Business Partner)
and the Trustee, and

WHEREAS, the Trustee wishes to disclose to Recipient certain confidential and proprietary
information, written or oral, relating to the Company's businesses, products, assets and
operations.  For purposes of this Agreement, the term "Confidential Information" shall include,
without limitation, all information, data, reports, analyses, compilations, studies,
interpretations, projections, forecasts, records, credit documents and other materials (whether
prepared by the Trustee, the Company or otherwise and in whatever form maintained, whether
documentary, computerized or otherwise), and all notes, summaries, or other material derived
therefrom, that contain or otherwise reflect information concerning the Company, and

WHEREAS, the Trustee wishes to disclose the Confidential Information to Recipient for the sole
purpose of allowing Recipient to evaluate a possible Transaction.

NOW WHEREFORE, the Trustee agrees to disclose, and Recipient agrees to receive and use, certain
Confidential Information subject to terms and conditions set forth below:

1.    Recipient agrees: (i) not to use any Confidential Information except for the sole purpose of
evaluating the merits of a potential Transaction and the terms thereof; (ii) to keep confidential
and not to disclose any Confidential Information, other than to those of its officers, directors,
employees, advisors, members and representatives (collectively, "Representatives") with a need
to know the information contained therein; *provided*, that such Representatives shall have

agreed to be bound by the terms of this Agreement; and (iii) not to disclose that the Confidential Information has been made available, that any Representatives have inspected any Confidential Information, or that the Trustee may be considering a Transaction or have had, are having or propose to have any discussions with respect thereto.

2.    Confidential Information shall not include any information that (i) is or becomes generally available to the public other than as a result of a disclosure by Recipient or any Representatives of Recipient in violation of this Agreement, (ii) was available to Recipient on a non-confidential basis prior to its disclosure to Recipient by the Trustee or its representatives, or (iii) becomes available to Recipient on a non-confidential basis from a source other than the Trustee or his representatives when such source is entitled, to the best of Recipient's knowledge, to make such disclosure.

3.    The Trustee may elect at any time to terminate further access by Recipient to the Confidential Information by providing written notice to Recipient.  Upon receipt of such notice, Recipient agrees to promptly (and in any case within 14 days of such notice) return to the Trustee all Confidential Information, or, if permitted by the Trustee, cause all Confidential Information to be destroyed, and confirm in writing that all such material has been either returned or destroyed in compliance with this Agreement.  The Trustee and Recipient further acknowledge that no such termination will affect their obligations hereunder or those of their Representatives, all of which obligations shall continue in effect for the term of this Agreement.

4.    Notice pursuant to this Agreement shall be deemed given when transmitted via certified mail, return receipt requested or via Federal Express or other recognized standard overnight delivery to:

<u>As to Trustee:</u>
Ron Ross, Chapter 11 Trustee
Skyline Manor, Inc.
7350 Graceland Dr., 68134
ron.ross@rhdconsult.com

With a copy to:

T. Randall Wright
Baird Holm, LLP
1500 Woodmen Tower
Omaha, NE 68102
rwright@bairdholm.com

<u>As to Recipient:</u>

_____
_____
_____
_____

5.    If requested or required (by oral questions, interrogatories, requests for information, subpoena, civil investigative demand, or similar process) to disclose any Confidential Information, Recipient agrees to provide the Trustee with prompt written notice of such request so as to allow the Trustee to seek an appropriate protective order and/or waive compliance with the provisions of this Agreement. If, failing the entry of a protective order or the receipt of a waiver hereunder, Recipient or Recipient's Representatives are, in the opinion of Recipient's or Recipient's Representatives' counsel, as the case may be, compelled to disclose Confidential Information under pain of liability for contempt or other censure or penalty, Recipient may disclose only that portion of such information as is legally required without liability hereunder; *provided*, that Recipient agrees to exercise Recipient's best efforts to obtain assurance that confidential treatment will be accorded such information.

6.    Unless otherwise agreed to by the Trustee, the Committee and Oxford, all (i) communications regarding any possible Transaction, (ii) requests for additional information, (iii) requests for facility tours or management meetings, and (iv) discussions or questions regarding procedures in connection with any possible Transaction, will be submitted exclusively to the Trustee, the Committee and Oxford. Neither Recipient nor Recipient's Representatives who are aware of the Confidential Information and/or the possibility of a Transaction will initiate or cause to be initiated any communication with any (i) stockholder, director, officer, representative or employee of the Company or any employee working at the Company, (ii) any customer, supplier, insurer or lender of or to the Company, or (iii) any other Potential Business Partner concerning the Confidential Information or a Transaction.

7.    For a period of two (2) years following the date hereof, Recipient will not, directly or indirectly, solicit for employment or hire any officer, director, or employee of the Company, any employee working at the Company, or any of the Company's subsidiaries, divisions or affiliates with whom Recipient has had contact or who became known to Recipient in connection with Recipient's evaluation of a Transaction, except that Recipient shall not be precluded from hiring any such employee who (i) initiates discussions regarding such employment without any direct or indirect solicitation by Recipient, (ii) responds to any public advertisement placed by Recipient, or (iii) has been terminated by the Trustee, the Company or its subsidiaries or affiliates prior to commencement of employment discussions between Recipient and such officer, director, or employee.

8.    Although the Trustee will endeavor to include in the Confidential Information all information that is known to them which they believe to be relevant for the purpose of Recipient's consideration of a Transaction, Recipient understands and agrees that none of the Trustee, the Company, the Committee, Oxford or any of their respective affiliates, agents, advisors or representatives (i) have made or make any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information or (ii) shall have any liability whatsoever to Recipient or any of Recipient's Representatives relating to or resulting from the use of or the provision of the Confidential Information or any errors therein or omissions therefrom. The furnishing of Confidential Information hereunder shall not constitute any grant, option or license to Recipient or any of its Representatives under any patent, trade secret or other intellectual property rights now or hereafter held by the Trustee, the Company or any of their Representatives.

9.    Without limiting the generality of the immediately preceding paragraph, the Confidential Information may include certain statements, estimates and projections with respect to the anticipated future performance of the Company. Such statements, estimates and projections

reflect various assumptions made by the Company concerning its anticipated results, which assumptions may or may not prove to be correct. No representations are made, by the Trustee or otherwise, as to the accuracy of such assumptions, statements, estimates or projections.

10.     It is further understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement and that the Trustee shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach, and Recipient further agrees to waive any requirement for the securing or posting of any bond in connection with such remedy. Such remedy shall not be deemed to be the exclusive remedy for breach of this Agreement but shall be in addition to all other remedies available at law or equity to the Trustee.

11.     This Agreement shall be governed by and construed in accordance with the laws of the State of Nebraska without regard to conflict of law principles (that might dictate the application of the laws of another jurisdiction). The parties hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Nebraska for any lawsuits, claims or other proceedings arising out of or relating to this Agreement, and hereby further irrevocably and unconditionally waive the right and agree not to plead or claim in any such court that any such lawsuit, claim or other proceeding brought in any such court has been brought in an inconvenient forum. Each of the parties hereto expressly waives all right to trial by jury in any action or proceeding arising out of or relating to this Agreement.

12.     This Agreement shall terminate two (2) years from the date hereof.

13.     Recipient may not assign or delegate this Agreement.

14.     The provisions of this Agreement are severable and, in the event that any of the provisions hereof are held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, the remaining provisions shall remain valid and enforceable.

15.     This Agreement may be executed in any number of counterparts and each counterpart shall for all purposes be deemed an original, and all counterparts shall together constitute one and the same instrument. Counterparts may be delivered by electronic means and will be effective on receipt of that counterpart.

    WHEREFORE, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

Skyline Manor, Inc.               _____

By: _____      By: _____

Name:  Ron Ross                  Name:
Title:   Chapter 11 Trustee         Title:

DOCS/1269200.3

## __EXHIBIT E__

**NOTICE OF AUCTION AND SALE HEARING**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SKYLINE MANOR, INC. | ) | Case No. 14-80934 (TLS) |
| | ) | |
| Debtor. | ) | |

## NOTICE OF SALE OF ASSETS, AUCTION, AND SALE HEARING

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    On _____, 2014, the United States Bankruptcy Court for the District of Nebraska (the "Court") entered an Order Granting Chapter 11 Trustee's Motion for Entry of an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estate's Assets, (B) Approving Break-Up Fee, (C) Scheduling an Auction and Hearing to Consider the Proposed Sale and (D) Approving the Form and Manner of Notice Thereof (the "Bidding Procedures Order"), which, among other things, establishes bidding procedures (the "Bidding Procedures") that govern the manner in which all or substantially all of the assets (the "Purchased Assets") of Skyline Manor, Inc. (the "Debtor") are to be marketed and sold.  All capitalized terms used but not defined herein shall have the meanings assigned to them in the Bidding Procedures Order.  A copy of the Bidding Procedures Order – which itself attaches the Bidding Procedures – is attached as Exhibit 1 hereto.

2.    All interested parties are invited to make offers to purchase all or some portion of the Purchased Assets, in accordance with the terms and conditions of the Bidding Procedures.

3.    Pursuant to the Bidding Procedures, in the event that the Chapter 11 Trustee receives more than one Qualified Bid (as defined in the Bidding Procedures) the Chapter 11 Trustee will conduct an auction for the Purchased Assets (the "Auction") on **October 20, 2014 at 10:00 a.m. (CDT)** at the offices of Baird Holm LLP, 1500 Woodmen Tower, 18th and Farnam Streets, Omaha, NE 68102, or such later time or other place as the Chapter 11 Trustee shall notify all Qualified Bidders.

4.    Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.  Any person wishing to participate in the Bidding Process must become a "Qualified Bidder."  The procedures for becoming a Qualified Bidder are contained in the Bidding Procedures.

5.    A Qualified Bidder desiring to make a bid must deliver written copies of its offer, via hand delivery or overnight mail, to (i) the Chapter 11 Trustee, c/o his counsel, Baird Holm LLP, 1500 Woodmen Tower 18th and Farnam Streets, Omaha, NE 68102, Attn. T. Randall Wright, Esq., (ii) the Committee, c/o its counsel, Pepper Hamilton LLP, 3000 Two Logan Square, 18th & Arch Streets, Philadelphia, PA 19103, Attn. Francis J. Lawall, Esq., and (iii) Oxford, c/o its counsel, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL

60661, Attn. Kenneth J. Ottaviano, Esq., so that the Bid is actually received by **12:00 p.m. (Noon) (CDT) on October 9, 2014** (the "<u>Bid Deadline</u>").  The Chapter 11 Trustee may extend the Bid Deadline pursuant to the terms of the Bidding Procedures Order, but are not obligated to do so.

   6. A hearing at which the Chapter 11 Trustee will seek approval and authorization of the Sale to the Successful Bidder (the "<u>Sale Hearing</u>") is scheduled to be held on **_____, 2014 at \_\_\_:\_0\_\_.m. (CDT),** unless otherwise continued by the Chapter 11 Trustee pursuant to terms of the Bidding Procedures Order, before the Honorable Thomas L. Saladino, Chief United States Bankruptcy Judge, at the Roman L. Hruska Courthouse, 111 South 18th Plaza, Suite 1125, Omaha, NE 68102.

   7. Within three (3) days after entry of the Bidding Procedures Order, the Chapter 11 Trustee shall file and serve upon counterparties to the Debtor's executory contracts and unexpired leases (the "<u>Counterparties</u>") a notice informing Counterparties that the executory contracts and unexpired leases may be assumed and assigned, and setting forth what the Debtor's records show to be the applicable cure amounts, if any (the "<u>Cure Notice</u>").  If any Counterparty wishes to assert an objection or other response to the Cure Notice, it must file and serve such objection or other response upon the parties listed in paragraph 8 so as to be actually received by 4:00 p.m. (CDT) on the date that is four (4) days prior to the Sale Hearing (the "<u>Objection Deadline</u>").

   8. Objections, if any, to the relief requested at the Sale Hearing, including without limitation objections relating to the assumption and assignment of executory contracts and/or unexpired leases, must: (a) be in writing filed with the Court, (b) comply with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and (c) be filed and served on the following parties by the Objection Deadline:  (i) the Chapter 11 Trustee, c/o his counsel, Baird Holm LLP, 1500 Woodmen Tower 18th and Farnam Streets, Omaha, NE 68102, Attn. T. Randall Wright, Esq., (ii) the Committee, c/o its counsel, Pepper Hamilton LLP, 3000 Two Logan Square, 18th & Arch Streets, Philadelphia, PA 19103, Attn. Francis J. Lawall, Esq., (iii) Oxford, c/o its counsel, Katten Muchin Rosenman LLP, 525 W. Monroe Street, Chicago, IL 60661, Attn. Kenneth J. Ottaviano, Esq., and (iv) the Office of the U.S. Trustee, Roman L. Hruska U.S. Courthouse, 111 S. 18th Plaza, Suite 1148, Omaha, NE 68102.

9.    This Notice is qualified in its entirety by the Bidding Procedures Order.


Date: _____, 2014                    Respectfully submitted,


                                              BAIRD HOLM LLP

                                              /s/_____
                                              T. Randall Wright (NE #16398)
                                              Brandon R. Tomjack (NE #22981)
                                              1700 Farnam Street
                                              Suite 1500
                                              Omaha, NE 68102-2068
                                              Tel: 402-344-0500
                                              Fax: 402-344-0588

                                              Email: btomjack@bairdholm.com
                                                      rwright@bairdholm.com


                                              *Counsel to Ron Ross, Chapter 11 Trustee*


DOCS/1286419.2

#29653772 v2